# CHARLESTON.

## RICHARDS *v.* CLARKSBURG.

Submitted September 17, 1887.—Decided November 26, 1887.

1. MUNICIPAL CORPORATIONS—INCORPORATED TOWNS AND VILLAGES—POWERS.

   Every town and village in this State, incorporated under the provisions of chapter 47 of the Code, or to which they apply, is a municipal corporation possessing all the powers incident to such corporations at common-law, not changed, abolished, or prohibited by statute.   (p. 495.)

2. MUNICIPAL CORPORATIONS—INCORPORATED TOWNS AND VILLAGES—POWERS.

   The corporate powers of every such municipal corporation can only be exercised by the common-council thereof, or under its authority, except where otherwise provided by law.   (p. 504.)

3. MUNICIPAL CORPORATIONS—INCORPORATED TOWNS AND VILLAGES—POWERS.

   The "corporate body at large" of every such incorporated town or village, in the exercise of its corporate powers, is represented by the "common-council" thereof.   (p. 504.)

4. MUNICIPAL CORPORATIONS —AMOTION.

   The power to remove a corporate officer from his office is one of the common-law incidents of *all corporations*.   (p. 404.)

5. MUNICIPAL CORPORATIONS—AMOTION.

   The common-council of the "town of Clarksburg," in this State, being a municipal corporation, existing under its charter as amended by chapter 47 of the Code, possesses such power of amotion, and for good cause may remove from his office the mayor of said town.   (p. 504.)

*E. Maxwell* for petitioner.

*John Bassel* for respondent.

WOODS, JUDGE :

On the twelfth of August, 1887, Wilbur F. Richards presented to one of the judges of this Court his petition, verified by his affidavit, alleging that on the first of January, 1887, he was duly elected mayor of the town of Clarksburg, and that at the same time J. F. Kearns, J. M. Swartz, Lee

Haymond, C. M. Hart, and S. Hoff were duly elected members of the common-council, and M. M. Thompson recorder of said town, and that since his election and qualification as such mayor he has at all times faithfully discharged the duties of said office; that on the fifth of August, 1887, one Martin Feeny made complaint on oath, before a notary in and for Harrison county, charging petitioner with official misconduct in this: "That on the twenty third day of June, 1887, Wilbur F. Richards then being mayor of said town, there was a circus, or show of like kind, within the corporate limits thereof, and that being informed that certain persons, and among them one Martin Feeny, would attend such show, intending to assault one Wm. Maphis, should he be there, the said Richards, as such mayor, instructed and charged Samuel Kidd and Wm. A. Roff, then being members of the police force of said town, and other persons whose names are unknown, who were connected with said show, *to make no arrests of any person or persons who might attempt to assault or injure said Maphis, but to club such persons as might attempt to make such assault while they had life in them;* meaning and intending thereby that said members of the police force and others should either kill or inflict great bodily injury upon such persons, including Feeny, who might assault or attempt to assault said Maphis, instead of directing such policeman and others to preserve the peace of said town by proper and legitimate means; and asking for this cause that petitioner should be removed from his office of mayor; which complaint was filed at a meeting of said town council on the fifth of August, 1887; that the town council thereupon fixed upon the sixteenth of August, 1887, for the trial of said charge, a copy of which complaint and order was served upon petitioner. The petitioner further alleged that there is no. authority in the charter of the town of Clarksburg giving the council of said town jurisdiction to try the said complaint, and that the said council is proceeding to try the same, without the members being first sworn to impartially try the same; and prayed that the town council of Clarksburg and Feeny be prohibited from all further proceedings in the premises.

A rule was awarded the petitioner by said judge against the defendants, returnable to this Court on the second day of its September term, 1887, at Charlestown, to show cause why a writ of prohibition should not issue as prayed for. The rule was returned executed, and on the return-day, duly docketed in this Court. The defendants, Thompson, Hart, Haymond, and Kearns, members of the town-council of Clarksburg, for answer to the rule, said that the town of Clarksburg was incorporated by the Legislature of Virginia by an act passed March 15, 1849; that by the provisions of said act, the government of said town was vested in a board of seven trustees, to be elected by the voters of said town, and certain other persons, who were owners of property within the same; that said board was authorized to appoint officers, to-wit, clerk, treasurer, and sergeant, and by section 10 of said act were authorized to remove them for official misconduct; that this charter was amended by acts of the Legislature of this State passed on the second of February, 1866, and February 27, 1867, and enlarged by chapter 47 of the Code of West Virginia, and amended by the act of March 14, 1882; that by section 14 of chapter 47 of the Code all the corporate powers of the said town were vested, in the council thereof; that among the powers so vested is the power of amotion, or removal of its officers for misconduct in their official character; that respondents, as members of said council, entertained charges of official misconduct against said Richards, preferred by said Martin Feeny, as they believed they had the right to do, and they submit they have the right to hear and determine the same without hindrance or interference from any court, or other jurisdiction.

To this return the petitioner has demurred, and we are now called upon to determine whether the "common-council of the town of Clarksburg" has jurisdiction to try the mayor of said town upon charges of official misconduct, and, upon conviction thereof, remove him from his office.

By the first section of chapter 47 of the Code, which went into effect on the first of April, 1869, it is declared that "the towns and villages heretofore established in this State remain subject to the laws now in force applicable thereto respectively; and the provisions hereinafter contained in this

chapter shall be deemed applicable only to towns and villages hereafter established, except that the council of a town or village heretofore established, may exercise all the powers conferred by this chapter, although the same may not be conferred by their charter; and, so far as this chapter confers powers on a town or village council not conferred by the charter of any such town or village, the same shall be deemed an amendment to said charter." Section 13 of said chapter, as amended by chapter 45, Acts 1877, declares that "the municipal authorities of such town or village shall be a mayor, a recorder, and five councilmen, who shall be freeholders of such town or village, and who shall form a common-council." And section 14 further declares that "the mayor, recorder, and councilmen of such town or village, as soon as they have been elected and qualified, and their successors in office, shall be a body politic and corporate by the name of 'The town or village of ——,' and shall have perpetual succession and a common seal; and by that name may sue and be sued, plead and be impleaded, purchase and hold real estate necessary to enable them the better to discharge their duties, and needful for the good order and government of said town or village. *All the corporate powers of the corporation shall be exercised by said council*, or under their authority, except when otherwise provided." And by section 29 of chapter 47 it is further declared that, "to carry into effect [certain enumerate powers,] and *all other* powers, conferred upon such town or village, or its council, by its council, or by any future act of the Legislature of this State, the council shall have power to make and pass all needful orders, by-laws, ordinances, resolutions, rules, and regulations not contrary to the constitution and laws of this State."

Chief Justice Marshall defines a "corporation" to be an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of the law, it possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its very existence. These are such as are supposed to be best calculated to effect the object for which it is created. *Dartmouth College* v. *Woodward*, 4 Wheat. 639. Municipal corporations are bodies politic and corporate of the general

character above described, established by law to assist in the civil government of the country, but chiefly to regulate and administer the local or internal affairs of the city, town, or district which is incorporated. 1 Dill. Mun. Corp., § 19. Like all other corporations in this State, they must be created by statute. They possess no powers or faculties not conferred upon them, either expressly or by fair implication, by the law which creates them, or by other statutes applicable to them, and they can only exist by virtue of express legislative enactment, creating or authorizing the creation of the corporate body. After a corporation is so formed it acquires many powers, rights, capacities, and incapacities. Some of these are necessarily and inseparably incident to every corporation; which incidents as soon as a corporation is created are of course tacitly annexed. These, according to Sir William Blackstone, are (1) to have perpetual succession; (2) to sue and be sued, implead or be impleaded, grant or receive, by its corporate name; (3) to purchase and hold lands for the benefit of themselves and successors; (4) to have a common seal; and (5) to make by-laws or private statutes for the better government of the corporation, which are binding on themselves, unless they are contrary to the laws of the land. 1 Bl. Comm. 472; 2 Kent Comm. 278.

We perceive, therefore, that while the forty-seventh chapter of the Code expressly declares the mayor, recorder, and councilmen a "body politic and corporate," it expressly confers upon it the incidents of perpetual succession, a common seal, the power to sue and be sued, to plead and be impleaded, the power to purchase and hold property for the benefit of itself and successors, and the power to make all needful orders, by-laws, ordinances, etc., for its good government.

The town of Clarksburg is therefore a municipal corporation, created or recognized by chapter 47 of the Code, composed of all the *bona fide* residents within its corporate limits, possessing all the powers of such a corporation, not withheld from it by its charter or the law of the land. It is contended by the petitioner that there is not in the statute creating the corporation of "the town of Clarksburg," nor in any amendment thereto, any express or implied grant of

the power of amotion, and therefore such power is not vested in that corporation, and for this reason the common-council thereof has no jurisdiction to try the petitioner upon the charges preferred against him, nor, upon conviction thereof, to deprive him of his office of mayor.

It is proper to remark here that while it is true there is not in said statute any *express grant* of the power of amotion, neither is there any limitation or restriction upon the general powers of that corporation to prevent it from exercising such power of amotion. We may further remark that it is wholly immaterial whether the charges preferred against the petitioner be true or false, or whether they are, or are not sufficient, if established upon a full, fair, and impartial hearing, to justify his removal from office; and therefore in respect to these questions we express no opinion. The real question is whether a municipal corporation has the right to try its principal officer upon charges of official misconduct, and upon his conviction before such corporation to remove him from office. Strange as it may appear, yet such is the fact, that, while this question is one of great public concern, intimately connected with, and almost necessarily affecting, the good order and government of *every* municipal corporation,—we have not been able to find in any of the reported cases to which we have access a *single case* in any of the States of the Union where this question has been decided.

In *Christie* v. *Malden*, 23 W. Va. 667, *Charleston* v. *Reed*, 27 W. Va. 681, and in *Gas Co.* v. *Parkersburg*, *supra*, 435 —this Court laid down the rule in relation to the powers of municipal corporations as follows: "A municipal corporation possesses and can exercise the following powers, and no others: (1) those granted in express words by its charter, or the general statutes under which it is incorporated; (2) those necessarily or fairly in or *incident to the powers* thus *expressly granted;* and (3) those essential to the declared purposes of the corporation, not simply convenient, but indispensable."

Keeping in mind these rules, we will now consider what powers, at the common-law, were incident to corporations generally, and what to municipal corporations; and what powers were expressly or incidentally granted to the town-

council of Clarksburg. In reviewing the authorities upon these questions, we find the courts and text-writers sometimes indiscriminately using the expressions " amotion" and " disfranchisement" as synonymous terms, when speaking of the removal of an officer, or the expulsion of a member of the corporation. " Amotion" relates alone to *officers* and " disfranchisement " to *members* of the corporation. " Amotion" is therefore the removal of an officer of a corporation from his office, but it leaves him still a member of the corporation; while " disfranchisement" destroys or takes away the franchise or right of being a member of the corporation. 2 Kent Comm. 298; Willcox Mun. Corp, § 708, p. 150; 1 Dill. Mun. Corp, § 238, p. 177.

As all municipal corporations in this State exist by virtue of statutory enactments, and the members of the corporation are generally all the inhabitants of the municipality, some of whom have the right to elect the governing body as well as the more important officers of the corporation, we will, as far as practicable, confine our examination of authorities to the power of such corporations to remove their officers. Here we will call attention to an important distinction between ours and the old English municipal corporations. In the latter, when its mayor or other chief officer was not present at a corporate assembly, it could transact no business of the corporation; for without his presence, as its head, no corporate act done was valid, while in *ours* the absence of such chief officer is immaterial, providing a quorum of the governing body is present. Willcox Mun. Corp. §§ 94–102; *Reg.* v. *Bailiffs, etc.,* 2 Ld. Raym. 1,233. Willcox, in his work on Municipal Corporations, says : " It is for the legislature or the crown to appoint what officers shall be in the corporation for the administration of its affairs; but the number of mayor, bailiffs, aldermen, etc., being thus constituted, the corporation has an incidental power of electing any of its members to fill these offices, and also of removing from office any one who .shall be guilty of maladministration, or of such offence against society as renders him improper to hold any public situation.

The earliest case to which we have had access is *Bagg's Case,* 6 Coke 99, as quoted by Lord Mansfield in his opinion

in *Rex* v. *Richardson*, 1 Burrows 517. The second resolution in *Bagg's Case* declared "that no freeman of any corporation can be disfranchised by the corporation unless they have authority to do it, either by the express words of the charter, or by prescription; but if they have not authority by charter or prescription, then he ought to be convicted by course of law before he can be removed." This resolution has been much criticised on the erroneous assumption that it declared that no *officer* of the corporation could be removed from office by the corporation, unless they had authority to do so, either by the *express words* of the charter, or by *prescription*. But when we consider that the *Case of Baggs* was not one of *amotion*, but of *disfranchisement*, it becomes apparent that this "*resolution*" in *Bagg's Case* affords no authority for the proposition that a corporation does not possess the power of amotion, unless conferred upon it by the express words of the charter, or by prescription.

*Lord Bruce's Case*, 2 Strange 819, decided in the King's Bench at Michaelmas term, II Geo. 2, was an information in the nature of a writ of *quo warranto* against him upon a forfeiture of his place as recorder by not attending; there being no clause in the charter empowering the corporation to so remove. The court said if it is an actual forfeiture, he is out, and you may choose another; if not, it is a misdemeanor, and a *quo warranto* will not lie.

Besides, the modern opinion has been that a power of amotion is *incident* to the corporation, though *Bagg's Case* seems contrary to it." *Rex*. v. *Bailiffs, etc.*, 2 Ld. Raym. 1,233; 2 Strange 819.

This question was again presented for consideration to the King's Bench in *Rex* v. *Richardson*, 1 Burrows 517. This was an information in the nature of a writ of *quo warranto* against Richardson, to show by what authority he held the office of postman at Ipswich. To this he pleaded that he had been lawfully appointed to fill a vacancy in that office caused by the amotion of his predecessor, who had been removed by the only remaining postman for failing to discharge the duties of his office as postman. The question was whether the defendant had good title to his office, and this depended on the questions (1) whether the vacancy was

duly made; (2) whether the defendant was duly elected. The objection to the first point was that the corporation had no power to amove, and to the second that the alleged cause of removal was insufficient.  Lord Mansfield, C. J., delivering the opinion of the court, said: "There are three sorts of offences for which an officer or corporator may be discharged: (1) such as have no immediate relation to his office, but are in themselves of so infamous a nature as to render the offender unfit to execute any public franchise; (2) such as are only against his oath, and the duty of his office, as a corporator, and amount to breaches of the tacit condition annexed to his franchise or office; (3) offences of a mixed nature, as being an offence against the duty of his office, and also a matter for which he is indictable at common-law. That while Lord Coke's report of the second resolution in *Bagg's Case* seems to go to the power of trial, and not to the power of amotion, and seems to lay down the rule that where the corporation *has* power, by charter or prescription, they may try as well as remove, but where they have no such power there must be a previous conviction, so that after an indictment and conviction at common-law this authority *admits* that the power of amotion is incident to *every* corporation.  But it is now established that though a corporation has express power of amotion, yet for the *first* class of offences there must be a previous indictment and conviction."

In *Lord Bruce's Case*, 2 Strange 819, the court said: " The modern opinion has been that a power of amotion is *incident* to the corporation, and we all think the modern opinion is *right*.  It is as *necessary* to the good order and government of corporate bodies that there should be *such a power* as the power to make by-laws.  And where the offence is merely against his duty as a corporator he can only be tried for it by the corporation.  Unless this power is incident, franchises or offices might be forfeited for offences, and yet there would be *no means* to carry the law into execution.  Suppose a *by-law* made to *give power of amotion* for just cause, such a by-law would be good.  If so, a corporation, by virtue of an incident power, may raise to itself authority to remove for just cause, though not expressly given by character or prescription."

When the offence is against his duty as a corporator, but is not a misdemeanor against the general law, he may be amoved by the corporation, or those in whom the power is vested, without any previous proceeding against him in the courts of law.

1 Burrows, 517, *supra*, and *King* v. *Mayor*, etc., 1 Doug. 149, were proceedings by *mandamus* to restore Fane and Luther to their offices as capital burgesses, from which they had been removed by the " Mayor and Burgesses," which was the corporate name of Lyme Regis, and the return stated that they had been removed by the *corporate body at large*, but failed to aver that the power of amotion was vested in them. It was contended on behalf of the King that the return was insufficient, because it failed to aver that the meeting which disfranchised Fane and Luther was held by any right or custom, and did not aver that the corporation at large had authority to disfranchise, nor did it aver that they had a right to disfranchise for the reasons for which they had disfranchised the prosecutors. Lord Mansfield, delivering the opinion of the King's Bench in this case, said : " The great objection to this return is that·the defendants have not set out that the body at large has the power of amotion. They have set out the charter, and we must take it to be as stated, and there is no special power thereby given, either to the whole body or to any select part. In such case, the charter making them a corporation, the law implies the right to remove to be in the whole body." Buttler, J., in the same case, said : " Before the *Cases of Lord Bruce* and *Richardson* it was thought necessary to state the power to be in the corporation at large, because it was *not then* thought *incident* to them. It is now settled to be matter of law that *prima facie* the power of amotion is in the *body at large*, and for this reason the return was held sufficient." And in Willcox Mun. Corp., § 629, the rule is stated as follows : " If the power of amoving any officer is not expressly confined to any particular person or class, it is incident to the corporation at large, and not to the person or class in whom the right of appointing or electing such officer is vested." See, also, Grant. Corp., § 89, p. 241.

Professor Minor, speaking of the disfranchisement of

members and amotion of officers, says : " In cases of corporations owning property divided into shares, no shareholder is liable to be expelled for any cause whatsoever, unless it be specially so provided in the charter; but as by purchase of stock he becomes a member, so by transferring it he ceases to be such, without the concurrence of the corporation in either case, save to record the transfer of the shares. 1 Inst., pp. 525, 527, pt. 2. In cases of municipal, religious, benevolent, or scientific corporations, where there is no specific share of property invested in each corporation, disfranchisement may take place as *incident* to the very nature of the corporation, and as being a consequence of conditions tacitly annexed to every such franchise, for every infamous offence of which the corporator shall be convicted in due course of law, *and* for *any act* contrary to his duty as a corporator." Minor. Inst., *supra ; Rex* v. *Richardson*, 1 Burrows, 518 ; *Lord Bruce's Case*, 2 Strange 819.

Speaking of the amotion of officers, Mr. Minor, in his Institutes, pt. 2, vol. 1, 527, says the power to amove officers, unless restrained by the charter, is, from the necessity of the case, as much incident to a corporation as the power of making by-laws ; citing, as authority for this statement, *Lord Bruce's Case, Rex* v. *Richardson*, and *King* v. *Mayor, etc., supra.*

If the officer be a ministerial one, holding *during pleasure*, he may generally be removed without notice or trial, and he is in fact removed upon the appointment of a successor; but if he holds during *good behavior*, or for a fixed term, he can only be removed after summons, and after having license and opportunity to answer for himself. *Warren's Case*, 3 Cro. Jac. 540; *Middleton's Case*, Id. 358; *Rex* v. *Thame*, 1 Strange 115; *Lord Bruce's Case*, 2 Strange 819; *Rex* v. *Richardson*, 1 Burrows 518; *The King* v. *Mayor, etc.*, 1 Doug. 149 ; *Burr* v. *McDonald*, 3 Grat. 215.

*Rex* v. *Mayor of Canterbury*, 1 Strange 674; was a *mandamus* to restore a recorder. The corporation returned that he was only an officer at pleasure, and that upon due summons to choose another, they did choose another, and the relator was thereby removed. The court held that we must presume that people know the effect and consequence

of their own acts; that, in the case of an officer at pleasure, a new election is an amotion.

In *Warren's Case, supra,* Warren, being one of the council of Coventry, was removed from office and obtained a writ of restitution. The corporation made return that they had a custom to elect any to be of the common-council, and to remove him at pleasure, and that Warren had been removed, etc. The court held the return good.

Cambridge in England is incorporated by the name of the "Mayor and Bailiffs," etc., and there is a clause in the charter that the mayor and burgesses may displace the bailiffs. Thompson, who was one of the bailiffs, lawfully elected, was displaced by the mayor and burgesses, and came into the King's Bench, and showed that he was displaced by the displeasure of Mayor Edmunds, without cause; and although the charter, in that instance, authorized the removal of the bailiff, yet, inasmuch as he was an officer of the king as a bailiff, the court held that he could not be displaced without cause, and he was accordingly restored. 2 Rolle, Abr. 456.

In 2 Kent Comm. 297, the law on amotion and disfranchisement is thus announced: "The power of amotion and disfranchisement of a member is a power necessarily incident to *every* corporation. It was, however, the doctrine formerly that no freeman of a corporation could be disfranchised by the act of the corporation itself, unless the charter expressly conferred the power, or it existed by prescription. But Lord Hale [in *Bagg's Case, supra,*] held that every corporation might remove a member for good cause; and in *Lord Bruce's Case* the court of King's Bench declared the modern opinion to be that a power of amotion was incident to a corporation. At last, in the case of *Rex* v. *Richardson,* the question was fully and at large discussed in the King's Bench, and that court decided the power of amotion was *incident* and *necessary* for the good order and government of corporations as much as the power of making by-laws. But this power of amotion, as the court held in that case, must be exercised for good cause, and it must be for some offence that has immediate relation to the duties of the party as a corporator; for, as to offences which have no immediate relation to his cor-

porate trust, but which render a party infamous and unfit for any office, they must be established by indictment and trial at law before the corporation can expel him for such a cause. If there be no special provision on the subject in the charter, the power of removal of a member for just cause resides in the whole body. But a select body may possess the power, not only when given by the charter, but in consequence of a by-law made by the body at large." And, by way of emphasizing still more strongly the text of the commentaries, if that was possible, he adds to the enumeration of the *five* ordinary incidents of every corporation, as given by Blackstone, a *sixth* incident, viz., "The power of amotion, or removal of members;" and proceeds to show that he uses the term " amotion " in its proper technical sense; as the *removal of officers* only. Id. 278.

Judge Dillon, in his admirable work on Municipal Corporations, treating of amotion and disfranchisement, says : " The elementary works treat of these two subjects together; indeed formerly the important distinction was not observed. Amotion alone relates to officers; disfranchisement to corporators, or members of the corporation. Amotion, therefore, is the removal of an officer in a corporation from his *office*, but it leaves him still a member of the corporation. Disfranchisement destroys or takes away the franchise or right of being any longer a member of the corporation." The power to amove a corporate officer from his office for reasonable and just cause is one of the common-law incidents of all corporations. This doctrine, though declared before, has been considered as settled ever since Lord Mansfield's judgment in the well-known case of *Rex* v. *Richardson*, 1 Burrows, 517, where he declared that " it is necessary to the good government of corporate bodies that there should be such power as there should be power of making by-laws; and that, from the *reason* of the thing, from the nature of corporations, and for the sake of order and government, the power is incidental." But this power, like any other incidental power, is incident to the corporation at large, and not to any select body, or any particular part of it; and unless delegated to a select body, or part of it, must be exercised by the whole corporation, and at a corporate assembly regularly

and duly convened. Willcox Mun. Corp., § 629; 1 Dill. Mun. Corp., § 241. By the "corporation at large" is meant the different ranks and orders which compose it, including the definite and indefinite bodies. But our corporations in this State have no ranks, orders, or integral parts corresponding strictly to the constitution of the old English corporations.

In this State all the corporate powers of the towns and villages created or existing under the provisions of chapter 47 of the Code, or to which they are applicable, can only be exercised by the common-councils thereof, or under their authority, except where otherwise provided. By the twenty ninth section of that chapter, they are expressly invested, among other powers, with authority to make and pass all needful orders, by-laws, ordinances, rules, and regulations, not contrary to the constitution and laws of this State, to carry into effect all the powers conferred upon such towns and villages. As we have already shown that the "common council of the town of Clarksburg" is a municipal corporation, existing under its charter as amended by chapter 47 of the Code, and that the power of "amotion" for good cause is an incident of every municipal corporation, and that this power is necessary for the good order and government of such corporations, it follows that the corporation of "The Common Council of the Town of Clarksburg" possesses this power of amotion, and that the "common council" thereof, by the express provisions of section 14 of that chapter, exercises all the corporate powers of that corporation, and therefore it may rightfully, for good cause, remove its mayor from office; and this conclusion is in accord with the rule laid down by this Court in *Christie* v. *Malden,* and *Charleston* v. *Reed,* and *Gas Co.* v. *Light Co., supra.* We are therefore of opinion that "The Common Council of the Town of Clarksburg" has jurisdiction to try the petitioner, Wilbur F. Richards, upon the charges in his petition mentioned, which have been preferred against him, and upon such trial to hear and determine the same. The rule heretofore awarded to the petitioner against the defendants must be discharged, and his petition dismissed, with costs to the defendants, who have appeared and answered the rule.

RULE DISCHARGED.