## MAYOR etc. OF SAVANNAH v. GRAYSON et al.

1. A judgment rendered at chambers, denying a motion to revoke an order granting a writ of prohibition, may be brought to this court by a "fast" bill of exceptions. The motion dealt with in the present case was, in substance, a motion of the character above indicated.
2. The members of the board of fire commissioners of the City of Savannah are municipal, or corporate, officers of that city.
3. A municipal corporation has an incidental power to institute proceedings against, and remove from office for misconduct, all corporate officers, though the power to do so be not expressly given by the charter of such corporation.

Argued January 28, — Decided April 12, 1898.

Prohibition. Before Judge Falligant. Chatham county. November 5, 1897.

*Samuel B. Adams*, for plaintiff in error.
*F. G. duBignon, Alexander A. Lawrence* and *A. S. Way*, contra.

LUMPKIN, P. J. An application for a writ of prohibition was presented by Grayson and others, members of the board of fire commissioners of the City of Savannah, established by the act of December 4, 1895 (Acts of 1895, p. 292), against the mayor and aldermen of that city, to prohibit the latter from trying the petitioners for alleged misconduct in office. Judge Sweat, of the Brunswick circuit, in the absence from the State of Judge Falligant, of the Eastern circuit, entertained the petition, and, on October 11, 1897, granted thereon an order, the portion of

which now material to be considered is as follows: "I have read, considered, and do sanction the foregoing petition; and thereupon it is ordered that it be filed in office, and that process do issue. It is further ordered, that the said Mayor and Aldermen of the City of Savannah be and they are required to be and appear at the next term of the superior court of said county, and show cause why they should not be permanently restrained from trying the petitioners in the above and foregoing application; and it is further ordered that the said Mayor and Aldermen of the City of Savannah be and they are hereby restrained and prohibited from proceeding with said trial until the further order of the court. It is further ordered that a copy of the foregoing petition, order, and prohibition be served upon the mayor and aldermen of said city by leaving a copy thereof with Honorable P. W. Meldrim, mayor of said city, and with the clerk of the city council." Subsequently, but before the term to which the petition was made returnable had arrived, the mayor and aldermen presented to Judge Falligant a written motion in the following words: "And now comes the defendant, the above-named municipal corporation, by its attorney at law, and (ten days notice of this motion having been previously given) moves the court to dissolve the restraining order granted in the above case on the 11th day of October, 1897, restraining and prohibiting this defendant from proceeding with the trial of the above plaintiffs, this motion being based upon the ground that no cause for a restraining order or prohibition is set forth in the petition therefor."

This motion, after due notice to the plaintiffs, was heard on November 5, 1897, by Judge Falligant, who passed an order in the language below quoted: "After full consideration of said motion upon arguments and authorities produced, it is held that the said defendants, the Mayor and Aldermen of the City of Savannah, have no express or implied authority to try and remove said 'The Savannah Board of Fire Commissioners.' The remedy is with the General Assembly of Georgia, either by repeal or by amendment to the act creating said board, giving to the mayor and aldermen the right and authority claimed. This power was granted to the mayor and aldermen expressly

in the case of The Savannah Park and Trée Commission by the amending act of 1896. It is therefore ordered, that said motion be refused, and that the restraining order hitherto granted in said cause shall continue of force until the cause shall be heard and disposed of in term, or until the further order of the court." The mayor and aldermen sued out a "fast" bill of exceptions, therein assigning error upon the granting of this order. When the case was called in this court, a motion was made to dismiss the writ of error, on the following grounds: First, because the same was granted prematurely, "there being no provision of law for a fast writ of error in said case." Second, "because no writ of error lay in said case to the grant or refusal of a motion to dissolve a temporary restraining order, the statute providing only for a writ of error from the grant or refusal of the application for writ of prohibition." This court reserved its decision upon the motion to dismiss, and heard argument upon the merits. After consideration, we are satisfied that the motion which Judge Falligant denied was in substance a motion to revoke the order passed by Judge Sweat, granting the writ of prohibition; and in our judgment this action on the part of Judge Falligant is proper subject-matter for a "fast" bill of exceptions. Upon the merits, our conclusion is that the trial judge ought to have granted the motion made by the mayor and aldermen.

1. It is the practice, under our statute, in cases of applications for injunctions, for the judge, upon sanctioning the petition, to grant an order requiring the party sought to be enjoined to show cause at a designated time and place why the injunction prayed for should not be granted; and the law declares that "no order for such injunction shall be granted until such party can be heard, unless it is manifest to such judge, from the sworn allegations in the bill, or the affidavit of a competent person, that the injury apprehended will be done if an immediate remedy is not afforded, when he may grant instanter an order restraining the party complained of until the hearing or the further order of the court, which restraining order shall have all the force of an injunction until rescinded or modified by the court." 'Civil Code, § 4924. The

"restraining order" for which this section provides is not an indispensable feature in a proceeding to obtain an injunction. It constitutes no part either of the judge's sanction or of the order to show cause. Such an order may be granted and the application for the injunction heard and disposed of without any restraining order at all. Indeed, the statute manifestly contemplates that there shall be no restraining order unless the apprehended injury will be done if an immediate remedy is not afforded. The office, therefore, of a restraining order is, in injunction cases, definite and distinct, and the granting or withholding of the same is an entirely different thing from the granting or refusal of an interlocutory injunction. The distinction here indicated was recognized in the case of *Hollinshead* v. *Town of Lincolnton*, 84 *Ga*. 590, mainly relied on, in support of the motion to dismiss, by counsel for the defendants in error. In that case, Chief Justice Bleckley said there was no provision of law for reviewing by a writ of error "an interlocutory order revoking or setting aside a temporary restraining order," citing previous decisions of this court. He also remarked : "Certainly the rescission of the temporary restraining order was no direct adjudication upon the right to injunction. It might well be that such a restraining order was needless, and whether it was or not, there is no power to review either the grant of it or its rescission." It will thus be seen that, in injunction cases, a restraining order is one thing, and a temporary injunction quite another. Both are in their nature interlocutory; but while the statute allows the suing out of a writ of error to review the judge's action in granting or denying a temporary injunction, it does not authorize a writ of error based upon any action of the judge in granting or refusing to dissolve a mere restraining order. If, therefore, we were, in this instance, dealing with an injunction case, the motion to dismiss the writ of error would, under the ruling in 84 *Ga.*, be regarded as having been well taken.

After thorough reflection we are satisfied, however, that the question presented by this motion to dismiss is not controlled by the decision in that case. There is, in prohibition cases, no statutory provision for a restraining order; and consequently

such an order, even when made a portion of the judge's action upon an application for prohibition, can not properly be regarded as having any essential office or function. Indeed, it is merely precautionary. The sanction of the petition and the order to show cause, being in effect the granting of the writ of prohibition, would be just as effectual without as with a formal restraining order. In United States v. Hoffman, 4 Wall, 161–162, Mr. Justice Miller remarked that "the only effect of a writ of prohibition is to suspend all action, and to prevent any further proceeding in the prohibited direction." In this connection see also High's Extraordinary Legal Remedies (3d ed.), §796, from which we extract the following: "In the absence of statutory regulations as to the pleadings and procedure in prohibition, the modern common-law practice is still applicable. According to that practice, the party aggrieved by the usurpation of jurisdiction in the court below applied to a superior court empowered to issue the writ, setting forth in a suggestion, petition or information, the nature and cause of his complaint. If the facts relied upon as the foundation for the relief were not presented by the record of the inferior court, the relator was obliged to verify his suggestion by affidavit, and to set forth all the material facts upon which he relied. The court thereupon granted a rule to show cause upon a given day why the writ should not issue. The effect of this rule, when served upon the subordinate court, was to stay all proceedings therein in the action prohibited, and upon return the court would make the rule absolute, or would discharge it, as seemed proper." It is also to be noted that an application for a temporary injunction may be made returnable in vacation; but while "the writ of prohibition may be granted in vacation, . . the return must be in term." Civil Code, § 4885. If, therefore, in advance of such term, the judge should revoke his sanction of the petition, the case would be at an end; for, as we shall hereinafter more fully show, there would be nothing to try in term upon an unsanctioned petition for an extraordinary remedy of this kind. Section 4926 of the Civil Code declares that: "The defendant may move the dissolution of an injunction, or the revoking of any other extra-

ordinary writ, in vacation, on ten days notice to the opposite party or his solicitor, and the judge shall decide thereon upon the same principles as if presiding in term.

We will now endeavor to show that the motion made by the mayor and aldermen in the present case should not be treated as simply one to set aside a mere restraining order, but that it was in its essence a motion to revoke the granting of the writ of prohibition. A careful examination and consideration of the language therein used convinces us that it would be "sticking in the bark" to hold that its only purpose was to get rid of a mere restraining order — a thing which, strictly speaking, has no place in prohibition practice, and the dissolution of which (even if it could be treated as something separate from the granting of the writ) would have accomplished nothing; for, unless the granting of the motion would have had the effect of setting aside the previous sanction of the petition, and as a consequence revoking the writ of prohibition, the case, even after the motion had been sustained, would still have stood for a hearing at the next term, the mayor and aldermen would in the meanwhile still have been prohibited from proceeding with the trial of the plaintiffs, and accordingly, both the making of the motion and the action of the judge thereon would practically have been a farce. We are quite certain that the eminent counsel for the plaintiffs in error never intended to indulge in such child's play as this. On the contrary, we think the motion filed by him evidences an intention to apply for and obtain a revocation of the granting of the writ of prohibition itself, and thus bring the case to a complete termination. While this motion does not in terms ask for a revocation of the writ which had issued, it amounts in substance to the same thing as if it had done so. It directly sought the dissolution of the order which restrained and prohibited the mayor and aldermen from proceeding with the trial of the plaintiffs, and itself declared that it was "based upon the ground that no cause for a restraining order or prohibition [was] set forth in the petition." This was neither more nor less than an assertion that the petition was absolutely without merit, and was therefore improvidently sanc-

tioned; that the order to show cause, which was equivalent to a granting of the writ of prohibition, was likewise improvidently granted; and that, for these reasons, the entire action taken by the court in the premises should be rescinded. Evidently the judge entertained this view of it; for he passed upon the merits of the petition and denied the motion because, in his opinion, the mayor and aldermen had "no express or implied authority to try and remove" from office the plaintiffs as members of the Savannah board of fire commissioners. A restraining order in an injunction case might be dissolved and still leave the application for injunction complete and intact; but a revocation of the order granted upon this petition ·for prohibition would leave nothing more to be done, and would, in effect, bring the case to an abrupt end. This is so because section 4967 of the Civil Code declares that whenever "an extraordinary process or remedy is prayed, the sanction of the judge . . must be first obtained before such process is issued or such remedy granted"; and it follows that if the judge revokes the sanction, the petition can no longer be made the basis for granting the extraordinary remedy sought by the plaintiff, for without the sanction of the judge the petition, for the purpose of obtaining such a remedy, has no vitality whatsoever, and no further proceedings thereon can, to that end, lawfully be had.

It is proper in this connection to state that it was urged in the argument here, that as the mayor and aldermen had not filed an answer, their motion could not have been predicated upon this section, because, in providing for the making of a motion "at chambers to set aside or dissolve the order granting the sanction of the court," it declares that such motion may be made "on ten days previous notice and the filing of the defendant's answer." Construing this language in connection with section 4926, which, as has been seen, allows a defendant, on ten days notice to the opposite party, to move in vacation for a revocation of any extraordinary writ, without regard to whether he has or has not filed his answer, it would seem that the filing of the same is, as the question in hand, rather a matter of privilege than an essential prerequisite to the making of the

motion provided for in section 4967, for this motion is, in effect, the same as that allowed by section 4926. Indeed, if a petition is not good as against a general demurrer, no answer would be needed. At any rate, the motion provided for by section 4926 may be made without having filed an answer, and, as we have endeavored to show, the motion made by the mayor and aldermen in this case was, in substance, that authorized by the section last mentioned. A denial of such a motion to revoke can, we think, be brought to this court by a "fast" bill of exceptions. While section 5540 of the Civil Code does not in terms mention the writ of prohibition, it does allow such a bill of exceptions in all cases of granting or refusing any extraordinary remedy. The writ of prohibition is certainly a remedy of this kind, and refusing to revoke such a writ already granted is surely the equivalent of granting it. Indeed, it is granting it over again effectively and after deliberation. Accordingly we hold that the motion to dismiss the writ of error was not well taken.

2. The act of 1895, creating the board of fire commissioners of Savannah, among other things provides as follows: The members of this board shall be appointed by the mayor of the city, and confirmed by the mayor and aldermen in council assembled. These commissioners have exclusive supervision of and control over the fire department of the city. The mayor has authority to call special meetings of the board. It is required to make to him a daily report, upon forms by him prescribed, showing the condition of the fire department, etc. It is also the duty of the board to present to the mayor annually an estimate of the needs of the fire department for the next ensuing year. The mayor has the right to make such recommendations to the board as he may deem proper, and he and any committee of the council designated by him are entitled at all times to inspect the records, proceedings, books and papers of the board; and the mayor and aldermen may, from time to time, confer upon the board any powers, or impose upon it any duties, not inconsistent with this act. Acts of 1895, p. 292. The foregoing recital is sufficient, we think, to demonstrate without further comment that the fire commissioners of Savannah are unquestionably municipal officers of that city.

3. The remaining question is whether or not the mayor and aldermen, in the absence of any express legislative authority so to do, have the power to institute proceedings against the fire commissioners and remove them from office for misconduct or neglect of duty. We state the question in this form because it is certain that the act of 1895 does not in terms invest the municipal authorities with any such power, and because we have been unable to find in the charter of Savannah any language which could fairly be construed as conferring upon them any express authority in the premises. Nevertheless we are satisfied that the mayor and aldermen may, as a necessary incident to the objects and purposes for which the city of Savannah was incorporated, exercise the jurisdiction claimed for them in the present case. This position is fortified by abundant and most respectable authority. As far back as 1758, Lord Mansfield, in the case of Rex *v.* Richardson, 1 Burr. 539, in speaking of the right of a municipal corporation to remove a "town portman," declared the law to be that such "a corporation, by virtue of an incident power, may raise to themselves authority to remove for just cause, though not expressly given by charter or prescription." This case has been frequently cited with approval, as stating the true law upon this question. "The power to amove a corporate officer from his office, for reasonable and just cause, is one of the common-law incidents of all corporations. This doctrine, though declared before, has been considered as settled ever since Lord Mansfield's judgment in the well-known case of The King *v.* Richardson." 1 Dill. Mun. Corp. (4th ed.) §§ 240, 241–242. Mechem, in his work on Public Officers, § 446, quotes the above from Judge Dillon. To the same effect, see 1 Beach on Public Corp. §§ 191–193. In 19 Am. & Eng. Enc. L. 562a, it is said: "The power to remove an officer of a municipal corporation is incident to the corporation at large, and unless delegated to a select body or part, it must be exercised by the whole corporation at a duly convened corporate assembly"; and numerous authorities are cited in note 4 in support of the text. In this country, the powers of "the corporation at large" are exercised by "the common council, or the elective government body, whatever name be given to it." 1 Dill. Mun. Corp. § 242.

8

A thoroughly well-considered case, directly in point, is that of Richards *v.* Clarksburg, 30 W. Va. 491, in which it was held that "the corporate body at large" of every incorporated town or village, "in the exercise of its corporate powers, is represented by the 'common council' thereof;" and that "the power to remove a corporate officer from his office is one of the common-law incidents of all corporations." The whole subject is elaborately discussed by Woods, J., who cites Rex *v.* Richardson, and also 2 Kent, 297, which is in accord with the other text-books on this question. See also Throop's Pub. Off. § 354, citing Willard's Appeal, 4 R. I. 597. In Ellison *v.* Raleigh, 89 N. Car. 125, the doctrine of Rex *v.* Richardson, as stated by Judge Dillon, was recognized; though, in that particular case, it was held that a municipal body could not deprive one of its members of his place for causes affecting his eligibility in existence at the time of his election. Indeed, we have found, in our investigation of this case, an unbroken line of authority to the effect that a municipal corporation may not, without just cause and after a hearing, remove from his office any corporate official who has been elected or appointed for a fixed term; although where an official holds only during the pleasure of the appointing power, he may be removed without a hearing. In this connection, see *Coleman* v. *Glenn,* 103 *Ga.* 458, and the authorities there cited. Many like authorities, relied on by counsel for the defendant in error, simply go to the extent of holding that an officer whose term is fixed by law can not be removed except for cause; but, so far as we have been able to discover, none of them, save one (Speed *v.* Common Council, 98 Mich. 360), negative the power of a municipal corporation to try and remove for cause an officer of the corporation, after notice to him and an opportunity to be heard, even though there be no express legislative authority to warrant such a proceeding.

The case of *Shaw* v. *Mayor & Council of Macon,* 19 *Ga.* 468, which was cited by counsel for the defendants in error, was an action instituted by Shaw for "the amount of salary that would have accrued to him as marshal of the City of Macon, for the time intervening his removal and the expiration of the term

for which he was elected," for "the perquisites of his office of marshal during the same time," and also for "the expenses of defending himself against the charges for which he was removed from office." It appears that this officer was elected by the people for a fixed term, and, under the charter, was removable only for malpractice in office or neglect of duty. In dealing with the case, Judge McDonald remarked (page 470): "The corporation has no incidental power of removing an officer deriving and holding his appointment as plaintiff did. Its whole power, in this case, is derived from the charter; and by the charter it could not remove him, except for malpractice in office or neglect of duty." It further appears that the charges for which the marshal was removed "did not amount to malpractice in office or neglect of duty," and that accordingly his removal was unauthorized. It may be that some stress was laid upon the fact that Shaw was elected by the people, and there is at least an intimation by Judge McDonald that if this officer had been appointed by the mayor and council, they might have had an incidental power to remove him. One thing is certain, viz.: the power to remove being expressly provided for in the charter, it was necessary for the municipal authorities to follow it strictly, and he could not be lawfully removed for any cause other than those specified. "Where the power to remove an officer is conferred by charter or statute, it must be strictly construed and its provisions accurately followed." 19 Am. & Eng. Enc. L. 562b, and cases cited in note 4. Unquestionably, therefore, the decision in *Shaw's* case was correct; but it is not properly to be regarded as controlling the present case, or as having any direct bearing thereon.

The fact that the General Assembly, by an act approved December 23, 1896 (Acts of 1896, p. 244), amended a previous act approved November 30, 1895 (Acts of 1895, p. 306), creating a park and tree commission for the City of Savannah, so as to confer upon the municipal authorities express power to remove from office members of that commission, is of no great weight in arriving at the true law of the present case. It will be noted that the act creating the park and tree commission was amended in several respects; and very probably it was,

while the subject of amending it was under consideration, thought wise to make the provision above mentioned, in order to relieve the question from any possible doubt. It not infrequently happens that a statute is, in effect, simply declaratory of what was already existing law. This, we think, is an instance in point.

Finally, we will remark that if what we now decide is not sound, we have the singular anomaly of a board of municipal officers who are not amenable to any authority whatsoever. We can not assent to such a conclusion. It is, in the language of our brother Adams, one which "ought to give us pause."

*Judgment reversed. All concurring, except Cobb, J., absent.*