[Sac. No. 1859. Department Two.—October 17, 1911.]

OSCAR L. LEGAULT, Respondent, v. BOARD OF TRUSTEES OF THE CITY OF ROSEVILLE et al., Appellants.

MUNICIPAL CORPORATION—AMOTION OF ELECTIVE OFFICERS—EXCLUSIVE METHOD OF REMOVAL PROVIDED BY CODE.—A municipality, whose charter is silent upon the matter, does not possess the power, acting through its trustees, to remove an elective officer of the municipality. The common law power of amotion of municipal officers is not an incident of the powers of municipal corporations in this state. The exclusive method for the removal of such officers is that found in the provisions of sections 758-772 of the Penal Code.

ID.—POWER OF AMOTION AT COMMON LAW BASED ON NECESSITY.—The power of amotion of municipal officers, which the common law recognized as an incident to the powers of English municipal corporations, was based upon necessity. No such necessity exists in this state, as the method by procedure in the courts, provided for in such sections of the Penal Code, is applicable to any and all municipal officers.

ID.—POWERS POSSESSED BY MUNICIPAL CORPORATION.—A municipal corporation possesses and can exercise only those powers which are either granted in express words, or those necessarily or fairly implied in or incident to the powers expressly granted, or those essential to the declared objects and purposes of the corporation—not simply

convenient, but indispensable. Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the power is denied.

ID.—LEGISLATIVE PROVISION FOR REMOVAL — POWER OF AMOTION BY MUNICIPALITY A MERE CONVENIENCE.—As a necessary deduction from the foregoing rules, it follows, that where the legislature, as in this state, has provided a specific form of proceeding for the amotion of officers, the ·power of amotion within the corporation ceases to be indispensable to the corporation, and its exercise by the corporation becomes at the most but a convenience.

ID —IMPLIED RESTRICTION ON POWER OF AMOTION—POWER CONFERRED BY CHARTER.—As to municipal corporations within this state, the general law touching the removal of its officers creates an implied restriction upon the exercise of what may be thought to be the inherent power of amotion. The necessity for the existence and exercise of that power being removed, it becomes at the best but a convenience. The power may be, notwithstanding the existence of the general laws, conferred by charter, and when so conferred will be construed, depending upon the nature of the language, as being either concurrent or exclusive.

APPEAL from a judgment of the Superior Court of Placer County. J. E. Prewett, Judge.

The facts are stated in the opinion of the court.

James D. Meredith, J. B. Landis, and P. H. Johnson, for Appellants.

Harris & Gibson, for Respondent.

HENSHAW, J.—The city of Roseville is a city of the sixth class. Oscar L. Legault, petitioner, is or was the duly elected, qualified, and acting marshal of the city. The board of trustees preferred charges against the marshal for dereliction of duty, and cited him to show cause why he should not be removed from office. After a hearing the board of trustees formally ordered the petitioner to be removed from the office of marshal of the city of Roseville. Legault then petitioned for a writ of review, seeking to have it declared that the action of the board of trustees in the premises was in excess of its powers and jurisdiction and therefore void. The trustees interposed a general demurrer to this petition. This being overruled, the petition admittedly setting forth the facts, and the trustees

consequently being unable to join issue by denial, they filed no answer, and judgment passed for petitioner as prayed for.

The trustees appeal, and the appeal presents for consideration a single question: Where the charter of a municipality is silent upon the matter, does the corporation, acting through its trustees, possess the power to remove an elective officer of the municipality?

It is not questioned but that the charter in terms confers no such power. But the argument for appellants is that at common law this power was regarded as a necessary incident to the functions of all municipal corporations, that not having been prohibited to this corporation, it exists and is to be exercised with other powers by the board of trustees, and that the provisions of the Penal Code (758-772) must be considered as fixing an alternative and not an exclusive method for amotion of municipal officers.

Since the decision of Lord Mansfield in *Rex. v. Richardson,* 1 Burr. 539, it has become an accepted doctrine that this power, based upon necessity, is a common law incident to the powers of the English municipal corporations. Considering the nature of the origin of such corporations, resting in some instances in a royal charter, in others on parliamentary grant, and in others on immemorial custom, with rights wrung through stubborn resistance to oppression, it must at once be recognized that the municipal powers of such corporations stand upon an entirely different plane from those of the state of California, where, in every instance, they are measured by the express terms of grants issued directly or indirectly by the state. This is pointed out in *Herzog* v. *San Francisco,* 33 Cal. 143, where it is said: "It should not fail to be noted that there is a clear distinction between most municipal corporations as they exist in Great Britain, and those of more recent date in the United States. The former depend upon prescription for their existence and capacity; while the latter find every element of their jurisdiction within their respective charters." Full assent is given to the rule of necessity, upon which the English decisions rest, that rule being that it is necessary that a corporation shall have the power to purge itself of offending officers. But this language was addressed to conditions here non-existent, to conditions where parliament had never attempted to pass a law to meet the needs of such corporations, and where, there-

fore, if the power of amotion did not exist in the corporation itself it did not exist at all excepting when a municipal officer might be guilty of an indictable crime and could be proceeded against accordingly. It was to this condition that the language of Lord Mansfield was addressed. But if parliament had passed a law applicable to all municipal corporations, providing in terms a method for the removal of derelict or recalcitrant officials, only then would there have been any sort of parallel between the English condition and the condition of this state, and even in such a case the parallel by no means would have been perfect. Judge Dillon ventures the opinion that the common law power of English municipal corporations is possessed by American corporations "in the absence of any express or implied restriction in the charter." (Dillon on Municipal Corporations, sec. 242.) While Judge Dillon declares that the question is not judicially settled, support is found for his view in certain jurisdictions, and notably in such cases as *Mayor of Savannah* v. *Grayson*, 104 Ga. 114, [30 S. E. 693], and *Richards* v. *Clarksburg*, 30 W. Va. 491, [4 S. E. 774]. These and the cases of their class go to the extent of declaring that such power exists in the corporation as a necessary incident to the objects and purposes for which it is created, in the absence of any prohibition in the law upon the exercise of such powers. But so far as our investigations have disclosed, in no one of these cases has the state made provision, applicable to all municipal corporations, for the removal of officers by judicial proceeding. We are not in this to be understood as declaring that the removal of a municipal officer by the municipality is such a judicial proceeding as to require the action of formally organized courts of judicature, but indisputably such amotion is the exercise of a judicial function, and the legislature may have thought that it could, therefore, with greater propriety be entrusted exclusively to the judicial branch of the government. Thus, says Mechem (Pub. Offices and Officers, sec. 455): "proceedings for the removal of an officer for cause are judicial in their nature and must be had before tribunals clothed with judicial power. The fit and appropriate tribunal, therefore, in ordinary cases is the court of law, but the judicial power may be, and even is, conferred on the governor, the mayor or other officer or board having the power of removal." Undoubtedly the legislature

of this state has done this precise thing in the sections of the Penal Code above cited. The case presented then is not the case of necessity. It is not the case where a municipality must be declared to have the power to remove its officers or it can never clean its house. It is the case where the law has provided general machinery, full and complete, to meet the case of any and all municipal officers, where the necessity for the exercise by the municipality of such power within itself is removed and where the final question for determination is whether the legislature in the enactment of laws vesting the general power of amotion in the courts nevertheless designed (by its mere silence) still to leave the full power of amotion with all municipalities, and by these positive enactments to declare only that the municipality could resort to the courts if it desired.

While the question here stated has never been formally presented for determination, this circumstance itself must be construed as in the nature of an admission that throughout the history of the state the power asserted was not supposed to exist. And, indeed, the existence of such power is contrary to the whole trend of judicial decision and legislative enactment. Thus, in *Von Schmidt* v. *Widber,* 105 Cal. 151, [58 Pac. 682], it is declared by this court in Bank, quoting from Dillon on Municipal Corporations, that "it is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: 1. Those granted in express words; 2. Those necessarily or fairly implied in or incident to the powers expressly granted; 3. Those essential to the declared objects and purposes of the corporation—*not simply convenient, but indispensable.* Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the power is denied." And to the same effect is *Hyatt* v. *Williams,* 148 Cal. 585, [84 Pac. 41].

. The necessary deduction to be drawn from this language is that where the legislature, as in this state, has provided a specific form of proceeding for the amotion of officers, the power of amotion within the corporation ceases to be indispensable to the corporation and its exercise by the corporation becomes at the most but a convenience.

Moreover, the decisions of this court will be found to rest upon the decided assumption at least that the power of removing municipal officers does not rest within the municipality unless there be an express grant to this end either in the charter or by general law. Thus in *Lorbeer* v. *Hutchinson,* 111 Cal. 273, [43 Pac. 896], where the trustees of the city of Pomona declared the office of city marshal vacant and appointed to fill the vacancy, this court said: "If Lorbeer (the petitioner) was lawfully in office the trustees could not by declaring the office vacant deprive him of his office. They have *no* power to remove from office or by any judicial inquiry to declare a vacancy." *In the Matter of Carter,* 141 Cal. 316, [47 Pac. 997], the whole discussion is based upon the power of removal granted by the charter. The same is true in the case of *Coffey* v. *Superior Court,* 147 Cal. 525, [82 Pac. 75], where is found such language as this: "Provisions of the charter seem to apply only to some officers and the scheme for the removal of delinquent officers is to that extent incomplete. . . . There is nowhere in the charter any provision which in terms confers exclusive jurisdiction upon the board of trustees to proceed to remove municipal officers, nor is there apparent in any charter provision an intent that this provision should supersede the provisions of the general law found in the Penal Code relative to the removal of delinquent officials from office. . . . The power conferred under the charter is, strictly speaking, the power of expulsion or amotion of its municipal officers. . . . This power of expulsion, amotion or *quasi* impeachment of delinquent municipal officers has generally been considered, both at common law and in this country as an incident of corporate existence and is exercised by the municipality as an administrative duty springing from its political existence and as vital thereto. . . . It is, strictly speaking, this administrative power which is conferred upon the trustees of the city of Sacramento under the charter." In *Craig* v. *Superior Court,* 157 Cal. 482, [108 Pac. 310], the provisions of an express grant of power in the charter to the city of Stockton are considered. The provisions of section 16 of article XX of the constitution are quoted to the effect that "in the case of any officer or employee of any municipality governed under a legally adopted charter the provisions of such charter with reference to the tenure of office or the dismissal

from office of any such officer or employee shall control," and it is held touching the employment, retention, and dismissal of members of the police and fire departments of the city of Stockton that the charter provisions are controlling and exclusive. In *Dinan* v. *Superior Court,* 6 Cal. App. 217, [91 Pac. 806], the same question arose touching the provisions of the charter of the city and county of San Francisco and it was there held in conformity with the provision of the constitution above quoted that the procedure prescribed by the charter was exclusive. In *Croley* v. *City of Sacramento,* 119 Cal. 229, [51 Pac. 323], this court considered the provisions of the charter of the city of Sacramento authorizing the board of trustees to try and remove appointees against whom charges had been preferred. Here the court refused to pass upon the question as to whether or not the city possessed the common law power of amotion but placed its decision solely upon the charter provision.

It is inconceivable if the power of amotion of its officers is inherent in a municipal corporation even when its charter is silent on the subject that this court would not long ago have so declared and thus have done away with a vast amount of the argumentative reasoning in which it has indulged and which is and was entirely superfluous if the contention of appellant herein is sound. Moreover, if the power here contended for was inherent in the municipality there would be little or no import to the language of section 16 of article XX of the constitution which undertakes in express terms to make the provisions of a municipal charter controlling with reference to the tenure of office or the dismissal from office of officers and employees of a municipality for, if the power exists as is here contended for, this solemn declaration of the constitution accomplished nothing and at the most was but the recognition of a power already existent.

And, finally, upon this proposition, the legislative enactments have their significance. Section 4386 of the Political Code empowers the mayor "to suspend and with the consent of the common council, to remove any non-elected officer, stating in the suspension or removal the cause thereof." Section 1852 of the Municipal Corporation Act, [Gen. Laws, 1910, Act 2348], which is the governing charter of the city of Roseville, empowers the board of trustees to appoint an "attorney,

poundmaster, superintendent of streets, civil engineer and such police and such other and subordinate officers as in their judgment may be deemed necessary and fix their compensation and each of said officers shall hold office during the pleasure of the board." The significance of these legislative declarations is found in this: 1. That they are made applicable to non-elective officers and not to elective officers; 2. If the power contended for inherently exists, it would be stultification for the legislature to provide with careful detail for the removal of non-elective officers when the city itself possesses the inherent power to remove non-elective as well as elective officers.

It is concluded, therefore, that as to municipal corporations within this state the general law touching the removal of its officers creates an implied restriction upon the exercise of what may be thought to be the inherent power of amotion. The necessity for the existence and exercise of that power being removed it becomes at the best but a convenience; the power may be, notwithstanding the existence of the general laws, conferred by charter and when so conferred will be construed, depending upon the nature of the language, as being either concurrent as in *Coffey* v. *Superior Court,* 147 Cal. 525, [82 Pac. 75], or exclusive as in *Craig* v. *Superior Court,* 157 Cal. 482, [108 Pac. 310]. (Const., art. XX, sec. 16.)

The judgment appealed from is therefore affirmed.

Melvin, J., and Lorigan, J., concurred.