[Civ. No. 8375. Second Appellate District, Division Two.—April 19, 1932.]

H. J. RUTLEDGE, Petitioner, v. ROBERT DOMINGUEZ, City Clerk, etc., Respondent.

Charles A. Son for Petitioner.

Erwin P. Werner, City Attorney, and Frederick von Schrader, Assistant City Attorney, for Respondent.

Joseph Scott, H. L. Carnahan, E. J. Fleming, George B. Bush, Walter Casey and R. D. Knickerbocker, *Amici Curiae.*

THOMPSON (IRA F.), J.—This is an application for a writ of mandate to compel the respondent city clerk of Los Angeles to omit from the ballot the name of John C. Porter as a candidate for election to the office of mayor. The controversy arises in this manner: A petition for the recall of Mayor Porter has been circulated and been found to be sufficient. The special election for that purpose has been fixed for the third day of May, 1932. The city charter provides in section 291 as follows:

"The ballots used at every recall election shall have printed thereon, as to every officer whose recall is to be voted on thereat, the following question:

" 'Shall (inserting the name of the officer sought to be removed) be removed from the office of (inserting the name of his office) by the recall?'

"And opposite such question to be voted on, and to the right thereof, the words 'Yes' and 'No' shall be printed on separate lines, with voting squares. If an elector shall stamp a cross (X) in the voting square after the printed word 'Yes', his vote shall be counted in favor of the recall of such officer, and if he shall stamp a cross (X) in the voting square after the word 'No', his vote shall be counted against such recall.

"On such ballots, under each question, there shall also be printed the names of all persons who have been nominated as candidates to succeed the person whose removal is sought, in case he shall be removed from office by vote of the electors. The nomination of such candidates shall be made as hereinafter provided, except that the person whose removal is sought shall be deemed a candidate, and unless, within five days after the date of the city clerk's certificate to the petition, he resigns his office, or declines, in writing duly signed and verified by him, and filed with the city clerk, to be a candidate, his name shall be printed on the ballot the same as if he had been regularly nominated in accordance with the provisions of this article."

It is now contended that this language is in conflict with article XXIII of the state Constitution and particularly that portion which refers to the form of the ballot and provides that "The name of the person against whom the

petition is filed shall not appear on the ballot as a candidate for the office." The article is long and we hesitate to quote it at length, but must give sufficient of its language to demonstrate that the procedure and manner of recall therein covered was intended to apply solely to elective officers of the state. It begins as follows: "Every elective public officer of the *State of California* may be removed from office at any time by the electors entitled to vote for a successor of such incumbent, *through the procedure and in the manner* herein provided for, which procedure shall be known as the recall, and is in addition to any other method of removal provided by law." (Italics ours.) It is to be immediately noted that had it been the intent to make the section of the organic law all inclusive it would have been sufficient to say "Every elective public officer" without the limitation imposed by the words "of the State of California". The article then proceeds to fix the percentage of voters necessary to sign the recall petition and says that it shall be "at least twelve per cent of the entire vote cast at the last preceding election for all candidates for the office, which the incumbent sought to be removed occupies (provided that if the officer sought to be removed is a *state officer* who is elected in any political subdivision of the *state*" it shall be signed by at least twenty per cent of the vote cast. It is then said that the petition shall be "addressed to the *secretary of state* and filed with the clerk or registrar of voters, of the county or city and county in which the petition was circulated" and a further provision is incorporated: "that if *the officer sought to be removed was elected in the state at large*" the petition must be circulated in at least five counties. It is then said that when the petition is certified "to *the secretary of state*" he shall submit it "*to the governor*", who shall thereupon "order and fix a day for holding the election" and also cause "publication of notice" for the holding thereof. The article then proceeds to provide that the ballot shall contain the alleged reasons for the recall and the answer of the officer thereto, and says that any person may be a candidate. It then provides for the form of the ballot and gives the language already quoted concerning the candidacy of the officer whose recall is sought. The next paragraph deals with the manner of circulating the petition and its verification,

concluding with provision that when it shall have been examined and certified it shall be submitted *"to the secretary of state"*. Next it is provided that "the secretary of state" shall certify his receipt of the petition and further that the recall shall be deemed to be filed *"with the secretary of state"* upon receipt by him of a certificate showing the petition to be signed by the requisite number of electors. It is said: "If at any recall election the incumbent whose removal is sought is not recalled, he shall be repaid from the state treasury any amount legally expended by him as expenses of such election, and the legislature shall provide appropriation for such purpose, and no proceedings for another recall election of said incumbent shall be initiated within six months after such election." The succeeding paragraph provides that if it is sought to recall the Governor, the duties imposed upon him by the article shall be discharged by the Lieutenant-Governor, and if the Secretary of State is sought to be removed his duties, in such event, shall fall upon the State Controller.

Here, then, is a full and comprehensive scheme providing for the recall of officers of the state. Not one word has been said about county or municipal officers. The reason why all of that to which we have referred makes no mention of county or municipal officers but is confined to and applicable only to elective officers of the state is made manifest by the two following paragraphs of the article which we quote in full and which read:

"The recall shall also be exercised by the electors of each county, city and county, city and town of the state, with reference to the elective officers thereof, under such procedure as shall be provided by law.

"Until otherwise provided by law, the legislative body of any such county, city and county, city or town may provide for the manner of exercising such recall powers in such counties, cities and counties, cities and towns, but shall not require any such recall petition to be signed by electors more in number than twenty-five per cent of the entire vote cast at the last preceding election for all candidates for the office which the incumbent sought to be removed occupies. Nothing herein contained shall be construed as affecting or limiting the present or future powers of cities or counties

or cities and counties having charters adopted under the authority given by the Constitution."

It seems to us self-evident that the provision which it is said the charter impinges upon is solely applicable to state officers and so it did to this court in the case of *Cohn* v. *Isensee,* 45 Cal. App. 531 [188 Pac. 279, 280]. That case involved the construction of sections 1196 and 1197 of the Political Code, dealing with the general subject of elections and "An act to provide for the recall of elective officers of incorporated cities and towns." (Stats. [Ex. Sess.] 1911, p. 128.) In the opinion in that case this court, speaking through Mr. Presiding Justice Finlayson, said: "In determining the question with which we are confronted—the proper construction to be placed upon the act for the recall of elective officers of incorporated cities and towns—we are not embarrassed by any possible conflict between the comprehensive scheme for recall elections provided by the Constitution itself, where the person sought to be recalled is a state officer, and a general law of the legislature. (See article XXIII of the Constitution for the scheme provided thereby for the recall of an elective public officer of the state.) The legislature, by this same article of the Constitution, is expressly empowered to enact laws prescribing the procedure for the recall of elective officers of cities and towns. The language of the organic law is: 'The recall shall also be exercised by the electors of each county, city and county, city and town of the state, with reference to the elective officers thereof, under such procedure as shall be provided by law.' It was pursuant to this authorization that the legislature, at its special session held shortly after article XXIII was adopted, passed the act of January 2, 1912, providing for the recall of elective officers of incorporated cities and towns." The quoted language was not necessary to the decision of the case, but we give it here simply for the purpose of illustrating the impression made upon the court by a reading of the constitutional article.

There is an additional reason which materially tends to support the conclusion to which we have come. It is a familiar rule of law that the courts will consider and give some weight to legislative interpretation. (*Legault* v. *Board of Trustees,* 161 Cal. 197 [39 L. R. A. (N. S.) 519, 118 Pac. 706]; *Northwestern Mutual Life Ins. Co.* v. *Roberts,*

177 Cal. 540 [171 Pac. 313].) In this regard it is to be noted that the legislature in the act to which we have already·made reference provided a complete plan and the procedure for the recall of elective officers of incorporated cities and towns. As indicated, this act was passed during the extra session of 1911, whereas the constitutional article was adopted October 10, 1911. Hence the enactment amounts to a contemporaneous legislative enactment and for that reason is entitled to more than ordinary weight. A reading of the act clearly indicates that the legislature considered the article of the Constitution as do we. But that is not all. The legislature in 1931 passed a new "act to provide for the recall of elective officers of incorporated cities and towns" (approved May 8, 1931, Stats. 1931, p. 563), in which enactment sections 12 and 13 read as follows: "Sec. 12. The clerk shall cause to be printed and mailed to each elector at least ten days prior to the election, sample ballots upon which shall be printed the statement of the proponents which was published with the notice of intention heretofore mentioned, followed by the answer, if any, of the officer sought to be recalled. There shall also be printed thereon the following question: 'Shall (name of person against whom the recall petition is filed) be recalled from the office of (title of the office)?'" Following which question shall be the words 'Yes' or 'No' on separate lines, with a blank space at the right of each, in which the elector shall indicate by stamping a cross (X) his vote for or against such recall. In case more than one person is sought to be recalled at the same election, the statements and answers for each person shall be printed in a separate column, and the question of recall shall be reprinted for each person separately. Sec. 13. There shall also be printed on the ballot the following question: 'If the recall prevails shall the council fill the vacancy or vacancies by appointment or call a special election for that purpose?' Following the question shall be the words 'By appointment' and 'By special election' on separate lines, with a blank space at the right of each in which the elector shall indicate by stamping a cross (X) his vote for appointment or election." Comment is unnecessary because it is obvious that the legislature

considered the language invoked in the present action to be applicable solely to state officers. It should also be noted that the charter provision of the city here in question passed under the scrutiny of and received the approval of the legislature before becoming operative.

Moreover, the plain construction which we feel the article bears on its face rationalizes the whole constitutional scheme. Section 8 of article XI of the Constitution provides for organization of cities under a freeholders' charter, which charter when ''approved by a majority of the members elected to each house shall become the organic law of such city or city and county, and supersede any existing charter and all laws inconsistent therewith''. The section further says: ''It shall be competent in any charter framed under the authority of this section to provide that the municipality governed thereunder may make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws.'' Section 8½ of the same article provides that freeholders' charters may empower the city operating thereunder to do certain things, and subdivision 4 thereof says: ''For the manner in which and the times at which any municipal election shall be held and the result thereof determined; for the manner in which, the times at which, and the terms for which the members of all boards of election shall be elected or appointed, and for the constitution, regulation, compensation and government of such boards, and of their clerks and attaches, and for all expenses incident to the holding of any election. It shall be competent in any charter framed in accordance with the provisions of this section, or section eight of this article, for any city or consolidated city and county, and plenary authority is hereby granted, subject only to restrictions of this article, to provide therein or by amendment thereto, the manner in which, the method by which, the times at which, and the terms for which the several county and municipal officers and employees whose compensation is paid by such city or city and county, excepting judges of the superior court, shall be elected or appointed, and for their recall and removal, and for their compensation, and for the

number of deputies, clerks and other employees that each shall have, and for the compensation, method of appointment, qualifications, tenure of office and removal of such deputies, clerks and other employees. All provisions of any charter of any such city or consolidated city and county, heretofore adopted, and amendments thereto, which are in accordance herewith, are hereby confirmed and declared valid.''

It will be seen that cities operating under such charters, of which Los Angeles is one, is not only given full control over municipal affairs but also the authority to provide for the manner and method of electing as well as recalling and removing its officers. It cannot be doubted that the election or recall of a mayor is a municipal affair, but if it could, this specific provision would dispel all doubt upon the subject. Hence, when article XXIII was adopted and power given to the legislature to regulate by law the procedure of the recall so far as it applied to cities and towns it was necessary, unless a conflict were to be created, to provide as the article does that ''Nothing herein contained shall be construed as affecting or limiting the present or future powers of cities or counties or cities and counties having charters adopted under the authority given by the Constitution.'' This sentence just quoted for the second time makes clear that the power of cities operating under freeholders' charters shall be as full and complete as was intended by section 8½ of article XI.

It is asserted that the charter provision making it possible for the elective officer to be recalled by a majority vote and elected to the place thus made vacant by the highest number of votes cast for a candidate, which may be less than a majority, results in a paradoxical situation, and therefore we should construe the provision to be subject to the method provided for state officers in the article of the Constitution. There is no ambiguity in the section of the charter. Its meaning is plain and intelligible. It is equally clear that the city has the right to adopt its own provisions to govern the recall. We have no right to interfere with the voice of the people as expressed in the charter. (*State ex rel. Smith* v. *Barbur*, 73 Or. 10 [144 Pac. 126].) Were we to attempt to so construe the charter provision we

would necessarily be departing from the judicial function and assuming to exercise the legislative prerogative.

For the reasons given, the order has already been made denying the peremptory writ of mandate, with the reservation that this opinion would be later filed.

Works, P. J., and Craig, J., concurred.