[Civ. No. 10377. First Appellate District, Division One.—November 24, 1937.]

BUD GALLICHOTTE, Plaintiff and Appellant, v. CALIFORNIA MUTUAL BUILDING AND LOAN ASSOCIATION (a Corporation), Defendant and Appellant; F. C. HOWARD et al., Defendants and Respondents.

Long & Levit and George H. Hauerken for Plaintiff and Appellant.

Bohnett, Hill, Cottrell & Boccardo for Defendant and Appellant and for Respondents.

KNIGHT, J.—Plaintiff's property was destroyed by fire. It was insured, and the insurer paid the loss. Thereafter plaintiff, in behalf of the insurer, brought this action for damages against the defendants to recover the amount of insurance so paid, alleging that the fire which destroyed the property was proximately caused by the unlawful and negligent acts of the defendants. The trial took place before the court sitting without a jury, and judgment was entered against the individual defendants Howard and Pilgram, but in favor of the corporate defendant California Mutual Building and Loan Association. Howard and Pilgram moved for a new trial as to themselves, and plaintiff moved for a new trial as against the association. Both motions were granted, the order specifying as ground therefor insufficiency of the evidence. Thereupon plaintiff appealed from the order so made in favor of Howard and Pilgram, and the association appealed from the order so made in favor of plaintiff. The two appeals are presented in one record.

The property destroyed consisted of house-painters' equipment, paints, oils and other supplies, an automobile, and furniture. It was housed in a paint shed, a garage and a dwelling on plaintiff's premises abutting a vacant lot belonging to the association. The fire was first observed in the roof of the paint shed shortly before 2 o'clock in the afternoon. During the morning of that day Howard and Pilgram, employees of the association and acting under its instructions, went upon the association's lot for the purpose of burning

the grass thereon. First they cut the grass on said lot along the rear of plaintiff's premises for a width of some eight feet and threw the cut grass towards the center of the lot; then they set fire to the stubble on the eight foot cut strip, and with wet sacks beat out the fire whenever it approached within a foot or thereabouts of plaintiff's premises, or came too close to the uncut body of the grass. After thus burning the stubble area they went to lunch, and returned about 1 o'clock to burn the main body of the grass. Before starting the fire, however, they notified the adjoining owners of their intentions, and borrowed some hose from the neighbors with which they wet down the strip already burned along the rear of plaintiff's buildings; and after the fire was started Pilgram walked back and forth along the line next to plaintiff's premises, with a bucket of water and a wet sack to extinguish any fire which threatened to communicate to the plaintiff's buildings. However, within an hour after the grass fire was started and while it was in progress a fire broke out in the out-buildings on plaintiff's premises, which ignited the dwelling and before the fire was extinguished it destroyed plaintiff's two out-buildings and their contents and damaged his dwelling and a portion of the furniture therein.

An existing municipal ordinance made it unlawful to burn grass or brush on private lots within the district embracing the association's property, except between the hours of 9 o'clock in the morning and noon of the same day, and even then if the fire would cause a dense smoke or offensive odor; and the judgment in plaintiff's favor and against the individual defendants was based on findings to the effect that they violated the provisions of said ordinance by starting the fire on the association's lot after the noon hour, and carelessly and negligently allowed the same to spread to plaintiff's buildings and thus destroy his property. But the association was exculpated from liability upon the ground that subsequent to the commencement of the action the state building and loan commissioner took over the affairs of said association, and that plaintiff failed to comply with the requirements of the Building and Loan Act by omitting to file a claim for damages with said commissioner.

This was the second trial of the action. The first took place also before the court sitting without a jury, but before a different judge; and judgment was rendered in favor of all

defendants. ■ That judgment was based on a finding to the effect that the evidence failed to establish any connection between the grass fire set on the association's lot and the one which broke out in plaintiff's shed or garage; but on appeal by plaintiff the judgment was reversed upon the ground that the only reasonable inference deducible from the undisputed facts was that the fire which destroyed plaintiff's property was proximately caused by the one unlawfully set by defendants on the association's lot. (*Gallichotte* v. *California Mutual Building & Loan Assn. et al.*, 4 Cal. App. (2d) 503 [41 Pac. (2d) 349].) Plaintiff now contends that the decision rendered on the former appeal with respect to the question of the origin of the fire which destroyed his property became the law of the case and therefore was controlling on the same issue at the second trial.

The reversal of the former judgment, being unqualified, evidently set the case at large for retrial on all issues. (*Ferran* v. *Mulcrevy*, 9 Cal. App. (2d) 129 [48 Pac. (2d) 894] ; 2 Cal. Jur. 996, 997, and cases there cited.) ■ That being so, the judge presiding at the second trial was not concluded in his determination of the disputed issues of fact by the decision rendered on the former appeal unless, as plaintiff contends, the evidence given at the second trial was not materially different from the evidence given at the first trial. ■ Defendants contend that it was, and this would seem to be true in the following respect: At the first trial the assistant fire chief, who was qualified by twenty-five years' experience in the fire department, and who arrived at the scene of this fire while it was in full progress, testified that in his opinion the fire which, destroyed plaintiff's property had its origin in the fire set by defendants on the adjoining vacant lot; but at the second trial, no such testimony was given by him, nor was any testimony of similar import given by any other witness. As will be noted from an examination of the decision rendered on the former appeal, the testimony so given by the assistant fire chief was emphasized by the court in its opinion as one of the important factors which led the court to the conclusion that the evidence proved as a matter of law and contrary to the finding of the trial court that the fire unlawfully started on the association's lot was the proximate cause of the fire which burned plaintiff's property. It would seem, therefore, that in the absence of such

factor it cannot be successfully maintained that the evidence adduced at the present trial measured up to the standard of conclusive proof upon which the court based its decision on the former appeal.

In their briefs the parties have evidently assumed that the reason for the absence of such testimony was that it was excluded on objections of the defendants; but the record does not so show. It does appear that the trial court sustained defendants' objections to several questions propounded to the witness by plaintiff, such as whether under the conditions prevailing at that particular time it was proper or prudent to start and attempt to control a grass fire in the manner followed by Howard and Pilgram; but the record discloses also that at no time was the witness asked, as at the first trial, to give his opinion as to the origin of the fire which destroyed plaintiff's property.

Moreover, at the first trial, no circumstances whatever were developed from which it might be reasonably suspected that the fire which broke out in plaintiff's out-buildings had its origin in any other source than the fire on the association's lot; whereas at the present trial evidence was adduced from which it is claimed such an inference might reasonably be drawn. In this regard it was shown that following the first trial the paint shed was rebuilt; that after it was rebuilt a fire broke out therein which admittedly was ignited by sparks emitted by a gasoline air-compressor engine housed therein; and defendants then went on to prove that shortly before 1 o'clock on the day of the first fire plaintiff started the engine of his automobile truck by means of the self-starter, while the truck was standing inside the paint shed near much inflammable material, including open cans of paint and oils and oil cloths; and that after starting the engine he drove the truck out of the shed. Defendants argue therefore, that the inference may be drawn from these newly developed circumstances that the first fire originated from a cause other than the grass fire, namely, from sparks emitted by the engine of the truck. To refute such theory plaintiff introduced testimony to the effect that the truck was backed out of the shed, so that the muffler and exhaust pipe, through which any sparks from the engine would necessarily have to be emitted, was pointed toward the open doors of the shed and away from the inflam-

mable material. The explanation so given, if true, would to all intents and purposes serve as a negative answer to defendants' theory as to the origin of the fire; but the trial court, as judge of the credibility of the witnesses, was not bound to believe the explanation so offered; and on appeal, all intendments being in favor of the trial court's order the presumption is that it did not accept the same as true.

In view of the different factual situations above pointed out, we are not prepared to hold, as plaintiff contends we should, that the trial judge on the second trial was concluded in his determination of the main disputed facts by the decision on the former appeal; and we are of the opinion that for the same reason it cannot be held that the evidence adduced at the present trial, when considered as a whole, establishes as a matter of law, as it did on the first trial, that the fire which destroyed plaintiff's property had its origin in the fire set on the association's lot by Howard and Pilgram.

There is, of course, no way of ascertaining from the record just how much weight, if any, the trial court gave to the new theory advanced by defendants as to the origin of the fire; and it may be that, as plaintiff argues, the additional evidence introduced on this point, standing alone, would not be of sufficient importance to take the case out of the scope of the decision rendered on the former appeal. Furthermore, it is quite obvious that the evidence adduced at the present trial, as a whole, would have been legally sufficient to sustain the trial court's finding as to the origin of the fire, had it allowed said finding to stand. But when the newly introduced evidence as to the origin of the fire is considered along with the more important variance in the factual situation created by the absence of the testimony of the assistant fire chief, we are unable to escape the conclusion that the decision on the former appeal is not here controlling as to the facts. And that being so, we are precluded, by well-settled rules, from interfering with the trial court's ruling granting a new trial on the merits. As repeatedly declared by the decisions dealing with the subject, the granting or refusal to grant a new trial in any case rests very largely within the discretion of the trial court—a discretion which is extremely wide; and its ruling will not be disturbed, especially where, as here, a new trial has been granted on the insufficiency of the evidence, unless there is a clear and affirmative showing of a gross, manifest

or unmistakable abuse of the discretion it is called upon to exercise. ■ Furthermore, in considering such a motion it may draw inferences opposed to those drawn by it in the trial; and its decision in ruling upon the motion will not be set aside where there appears to be a reasonable or even a fairly debatable justification therefor, notwithstanding that a contrary order might not be disapproved or the reviewing court might be inclined to take a different view. (20 Cal. Jur., pp. 27–31.)

■ Forty-two days after the filing of the action and the service of process, the building and loan commissioner took over the affairs of the association pursuant to the authority granted by the Building and Loan Association Act of 1931 (Deering's Gen. Laws, Act 986, Stats. 1931, p. 483), which was in force at the time these transactions took place; and the appeal taken by the association involves the question of whether under the circumstances plaintiff was required by the provisions of section 13.16 of said act to file with the commissioner a verified claim for the loss he claims to have suffered by the fire. The association contends he was and that his failure so to do bars recovery against the association.

This defense was neither pleaded nor urged at the first trial. It appears from the record that the commissioner was aware of the pendency of the action, and was served with a memorandum to set the cause for trial; and at the commencement of the second trial the court found that the commissioner carried on the defense of the action at the first trial in the name of the association. But the special defense now being urged was not interposed until shortly before the second trial. It was then pleaded by way of amended answer, and the trial court on the merits held it to be good; but in granting the new trial the association was brought back into the case.

The second paragraph of said section 13.16 of the 1931 act provided in substance that upon determining to liquidate an association, the commissioner shall prepare in duplicate and file an inventory of its assets, and shall publish notice "to all persons having claims against it as creditors or investors or otherwise, to present and file the same" within a time specified in the notice; that within ten days after the first publication of said notice he shall mail a copy thereof "to all per-

sons whose names appear of record upon its books as creditors or investors''. In this connection it was stipulated that the commissioner published such notice, but that he did not mail a copy of the notice to plaintiff. Continuing, said paragraph provided that upon the expiration of time for presentation of claims the commissioner shall prepare in duplicate and file a schedule of all claims presented, specifying those approved and those disapproved, and within five days shall mail notice to all claimants whose claims have been rejected; and that any action to enforce a rejected claim shall be brought and service had within four months of the date of the filing of such schedule; otherwise all actions thereon shall be forever barred. The third paragraph of said section provided: ''All claims of creditors, investors or other persons against the association . . . must be presented to the commissioner in writing verified by the claimant or someone in his behalf within the period limited in the above mentioned notice for the presentation of claims; and any claim not so presented shall be forever barred . . . ''; and the sixth paragraph of said section read as follows: ''The determination by the commissioner to liquidate any association, evidenced by filing written notice of such determination with the court, shall operate to stay or dissolve any or all actions or attachments instituted or levied within thirty days next preceding the taking of possession of such association by the commissioner, and pending the process of liquidation as herein provided no attachment or execution shall be levied or lien created upon any of the property of such association.''

It is plaintiff's contention that since the action herein was filed more than thirty days prior to the date on which the commissioner took over the affairs of the association, the provisions of the above section were and are inapplicable; and that in any event the service upon the commissioner of the memorandum to set the cause for trial, which stated among other things the title of the cause and that it was an action to recover damages for negligently setting a fire, was legally sufficient to satisfy the purposes of said section.

As will be seen, we are not here concerned with those provisions of the second paragraph of said section dealing with the matter of rejected claims because admittedly plaintiff presented no verified claim. Nor do the provisions of the sixth paragraph appear to be helpful in solving the problem of

whether or not it was necessary to file a verified claim, for the reason that the provisions of that paragraph do not pertain to the subject of filing claims. They provide merely for the stay of any action brought and the dissolution of any attachment levied within thirty days preceding the date on which the commissioner takes over the affairs of the association; also for the prevention from and after that date of the levy of any attachment or execution against the association's property. Therefore the issue narrows down to the question of whether that portion of the opening clause of the third paragraph of said section reading "all claims of creditors, investors or other persons against the association . . . " was intended by the legislature to include demands which have been made the subject of actions pending at the time the commissioner takes over the affairs of the association; and it is quite clear that the legislature did not so intend, because in 1935 it recast said opening clause so as to include therein the additional express provision embracing all such demands. As reenacted, said paragraph was made to read as follows: "All claims, *demands or causes of action of whatever nature, and regardless of whether or not a suit shall be pending to enforce the same at the time of the taking possession of the assets of the association by the commissioner,* of creditors, *and persons other than investors* against the association or against any property owned or held by it *in trust or otherwise,* must be presented to the commissioner in writing, verified by the claimant, or someone in his behalf, within the period limited in the above mentioned notice for the presentation of claims; . . . " (We have italicized the words constituting the amendment.) As said in *Meyerfeld* v. *South San Joaquin Irr. Dist.,* 3 Cal. (2d) 409, 417 [45 Pac. (2d) 321], a change in the phraseology of a law by amendment will be deemed as intended to make a change in the law. In other words, "A change of legislative purpose is to be presumed from a material change in the wording of a statute" (*Lundquist* v. *Lundstrom,* 94 Cal. App. 109 [270 Pac. 696]); and it is a general rule that in the ascertainment of the meaning of a statute courts will consider and give weight to legislative construction. (*Rutledge* v. *Dominguez,* 122 Cal. App. 680, 684 [10 Pac. (2d) 1027].) Therefore, in view of the new subject-matter embodied in the 1935 amendment, it is apparent that the legislature itself construed the third paragraph of section 13.16

of the act of 1931 as excluding from its operation claimants whose demands or causes of action had been sued upon and whose suits were pending at the time the commissioner took control of the affairs of the association; otherwise there would have been no necessity for the amendment. It is suggested in behalf of the association that the purpose of the 1935 amendment was merely to clarify the provisions of the 1931 act. But the rule is that any essential change in the wording of a statute by the legislature indicates an intention to change the meaning thereof rather than to interpret it. (23 Cal. Jur., p. 778.)

Therefore, following the obvious legislative construction limiting the operation of that portion of the 1931 act under discussion, it is our conclusion that plaintiff's action was not barred by the omission to file a verified claim with the commissioner; and such conclusion makes it unnecessary to inquire into plaintiff's second point as to the effect of the service upon the commissioner of the memorandum to set the cause for trial. The order granting the new trial as to Howard and Pilgram, and as to the association, is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 23, 1937, and the following opinion then rendered thereon:

THE COURT.—In response to the question raised by the petition for rehearing and the answer thereto, and in view of the fact that the judgment of affirmance herein calls for a third trial of the action, it may be stated by way of clarification that our decision holding that there was a material difference between the evidence introduced at the two trials is founded necessarily upon the premise that the testimony given at the first trial by the assistant fire chief as to the origin of the fire in question was on the former appeal deemed admissible for the purpose for which it was offered; otherwise the court in its decision therein would not have emphasized such testimony as one of the important factors upon which it based its conclusion that the evidence at that trial as a matter of law established the origin of the fire. On the other hand, without so construing the decision on the former

appeal, there doubtless would be no basis for sustaining as we have the contention of the defendants that the absence of such testimony at the second trial was legally sufficient to take the case out of the scope and effect of the decision rendered on the former appeal. Furthermore, it may be stated that in our opinion the ruling in the case of *St. Paul Fire & Marine Ins. Co.* v. *Southern Pac. Co.*, 30 Cal. App. 140 [157 Pac. 247], cited and relied on by the defendants, cannot be said to be controlling here for the reason that there the witness was called to testify purely as an expert, and the opinion he gave as to the origin of the fire in question there was based solely on a hypothetical case, that is, upon a state of circumstances established by the testimony of others; whereas here, as pointed out by the decision on the former appeal, the witness arrived at the scene of the fire while it was in full progress, and his opinion as to the origin of the fire was based entirely upon his own observation of the conditions existing upon his arrival.

The petition for rehearing is denied.