**W. H. HARKEY, C. E. Summitt, Lowell T. Estes and Joe Browning, Plaintiffs-Appellants,**

v.

**Tom B. MOBLEY, Nell Mobley, Charles L. Miller, Louise Miller and Senath State Bank, a corporation, Defendants-Respondents.**

**No. 10176.**

Missouri Court of Appeals, Springfield District.

May 23, 1977.

Motion for Rehearing or to Transfer to Supreme Court Denied June 9, 1977.

Application to Transfer Denied July 11, 1977.

James E. Reeves, Ward & Reeves, Caruthersville, for plaintiffs-appellants.

Wendell W. Crow, Ford, Ford, Crow & Reynolds, Kennett, for defendants-respondents.

Before STONE, P. J., TITUS, J., and HENSON, Special Judge.

TITUS, Judge.

The individual plaintiffs and defendants are stockholders of the Cardwell State Bank. Throughout 1972 (although plaintiff Browning was ineligible to serve as a director because of the provisions of § 362.-245–4, V.A.M.S.), the plaintiffs acted as four of the seven directors of the Cardwell bank. Defendant Miller was the bank's president and, until the regular December 1972 meeting of the board, defendant Mobley was chairman of the board. Mobley was also a stockholder, president and chairman of the board of defendant Senath State Bank.

With their 1970 U. S. Census population shown parenthetically, we judicially note that the fourth class cities of Arbyrd (575), Cardwell (859) and Senath (1,484) are situate in the southern part of third class Dunklin County (33,742), and that Arbyrd is not more than ten miles from the other two cities. *Moulder v. Webb,* 527 S.W.2d 417, 419[4] (Mo.App.1975); *Walsh v. Table Rock Asphalt Construction Co.,* 522 S.W.2d 116, 118[1, 2] (Mo.App.1975). The record reveals that the main offices of the Cardwell State Bank and the Senath State Bank are unsurprisingly located, respectively, within the cities of Cardwell and Senath, and that the events giving rise to this action would not have occurred but for the enactment of H.B. 838 by the 76th General Assembly. Laws of Missouri, 1972, p. 975.[1]

In July 1972 the Senath bank applied to and in September 1972 received from the director of finance authority to operate and maintain a separate banking facility at Arbyrd for the limited purposes specified in § 362.107, V.A.M.S. Albeit there was "street talk" in Cardwell in the summer of 1972 about the Senath bank putting in an Arbyrd facility, and although at least one of the plaintiffs had talked of the matter with defendant Mobley, the subject was never discussed at any meeting of the Cardwell bank board until a special meeting was called in October 1972, and the Cardwell bank at no time sought authority to establish a branch at Arbyrd. At the regular December 1972 board meeting of the Cardwell bank which defendant Mobley did not attend because he was recuperating from surgery, the attending members (including plaintiff Browning) voted to remove Mobley as chairman of the board on account of his alleged activity in securing the Arbyrd facility for the Senath bank. The attending members also authorized filing a suit by the Cardwell bank against Mobley and the Senath bank to enjoin construction of the Senath branch.

1. H.B. 838—". . . any bank with its main banking house in a county of the third class with a population of not more than thirty five thousand may establish, maintain, and operate one separate facility in that county in a town with a population of not more than one thousand five hundred which does not having banking services and which is not more than ten miles from the main office of the bank."

While plaintiffs cede that defendant Mobley and members of his family do not control the Cardwell bank, at the January 1973 annual meeting of shareholders, the individual defendants (Mobley et ux. and Miller et ux.) were elected to the board of directors. At the directors' meeting which ensued, the defendants secured approval of a resolution calling for dismissal of the aforementioned suit against Mobley and the Senath bank.

Plaintiffs describe the present suit as "a stockholder's [sic] derivative action in two counts." Count I seeks removal of the individual defendants as directors of the Cardwell State Bank; Count II sought to enjoin operation of the branch banking facility at Arbyrd by the Senath State Bank. The court resolved the issues against the plaintiffs and they have appealed.

█ Sans express statutory authority and absent, as here, allegations of fraud, courts of equity have no jurisdiction to remove directors or officers of a private corporation on the ground of mismanagement of the affairs of the corporation, neglect or other causes. The only power of amotion is in the corporation itself. Neither do courts have authority, absent statutory power, to grant injunctions restraining officers from performing their corporate duties since this would have the same effect as their removal. *Griffin v. St. Louis Vine & Fruit Growers' Association*, 4 Mo.App. 595, 596[1] (1877); *Feldman v. Pennroad Corporation*, 60 F.Supp. 716, 719[9] (D.C.Del. 1945), aff'd, 155 F.2d 773 (3rd Cir. 1946); 2 Fletcher Cyclopedia Corporations (Perm. Ed.) § 358, pp. 170–174; 19 C.J.S. Corporations § 738 b., pp. 74–75; 19 Am.Jur.2d, Corporations, § 1111, pp. 550–551; Annot., 124 A.L.R. 364–373.

█ From Laws of Missouri, 1877, to § 5366 RSMo 1939 (repealed Laws of Missouri, 1943, p. 410, et seq.), the circuit courts of Missouri had "jurisdiction over the directors, managers, trustees and other officers of corporations . . . third, to suspend any director, trustee, manager or other officer from exercising his office whensoever it shall appear that he has abused his trust; fourth, to remove any such director, trustee or other officer upon proof or conviction of gross misconduct; . . . ." See Historical Note following § 351.485, V.A. M.S. However, the repeal of those just recited statutes had the effect of blotting them out completely as if they never existed (82 C.J.S. Statutes § 434, pp. 1008–1009) and stripped the courts of the jurisdiction previously created by the voided laws. Of course, the reported cases relying on the jurisdiction of the courts granted by the repealed laws, would not be authority subsequent to statutory abolition. The provisions of § 351.485 have no application here as plaintiffs did not seek the court's equity jurisdiction to liquidate the assets and business of the corporation. Likewise, we are not concerned with the provisions of § 361.-270, V.A.M.S., as this cause was not suggested by the commissioner of finance through proceedings instituted by the attorney general. The court nisi was correct in ruling it had no jurisdiction to remove the individual defendants as directors of the Cardwell State Bank.

█ Everyone is presumed to know the law. *Hartley Realty Company v. Casady*, 332 S.W.2d 291, 295[4] (Mo.App.1960). Therefore, as acting directors of the Cardwell bank, plaintiffs were held to have knowledge that, effective August 13, 1972 (Laws of Missouri, 1972, p. 4), a state bank in Dunklin County could seek authority to maintain and operate a separate banking facility in another town with a population not exceeding 1,550 which had no banking facilities and which was within 10 miles of the applying bank. *Farmers & Merchants Bank of Eureka v. Boland*, 175 S.W.2d 939, 947[7] (Mo.App.1943).

█ Plaintiffs chant conspiracy, but whether a conspiracy was formed is not a matter of material importance if the acts of the alleged conspirators were legal. *Atkins v. Hughes*, 208 Cal. 508, 282 P. 787, 789 (1929). It would be futile to contend that it was illegal for defendant State Bank of Senath and defendant Mobley to plan an undertaking to operate a banking facility at

Arbyrd as authorized by law. Plaintiffs' charge against Mobley lies in his averred silence, i. e., that defendant Mobley's failure to disclose to the Cardwell board the intentions of the Senath bank to secure the Arbyrd branch, deprived the Cardwell bank of an opportunity to acquire the facility for itself or to oppose the application made by the Senath bank. However, plaintiffs' accusations smack of the pot calling the kettle black, for despite plaintiffs' presumptive knowledge of the law, despite the "street talk" regarding the matter and despite the fact that at least one of the plaintiffs was apprised of the situation by Mobley himself, none of the plaintiffs broached the subject at any meeting of the Cardwell bank board until October 1972, and none suggested action until December 1972 or approximately three months after the Senath bank had received its authority. The trial court found, and we agree, that "all [Cardwell] bank officials had the same opportunity to have knowledge of the new law."

After making extensive findings of fact and conclusions of law, the trial court concluded "that the plaintiffs have failed, by their evidence, to prove their actions against the defendants." We concur and affirm the judgment nisi.

All concur.