Argued and submitted January 11, affirmed August 18, 1982

# IWASAKI et al,
### *Appellants,*
### *v.*
# IWASAKI BROS., INC.,
### *Respondent.*

## (No. 39-648, CA 19593)

649 P2d 598

John W. Liljegren, Portland, argued the cause for appellants. With him on the briefs were Kevin O'Connell, and O'Connell, Goyak & Ball, P.C., Portland.

Ridgway K. Foley, Jr., Portland, argued the cause for respondent. With him on the brief were Charles R. Markley, and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiffs brought this suit under ORS 57.595[1] as one-third owners of the corporate defendant, seeking dissolution of the corporation for allegedly illegal and oppressive acts and misapplication of corporate assets by defendant's directors. After the close of plaintiffs' case, the trial court granted defendant's motion for dismissal with prejudice, and plaintiffs appeal. We review *de novo, Law v. Kemp,* 276 Or 581, 586, 556 P2d 109 (1976), and affirm.

The business involved here was begun in 1946 and was incorporated in 1954. Ownership was and still is divided equally among three brothers, plaintiff Arthur and his two brothers, George and Akira Iwasaki. Each brother owns one-third share jointly with his wife. Originally a general farming business, since 1968 the company has been exclusively a plant nursery. Plaintiff, Arthur Iwasaki, was the general manager of the nursery portion of the business and president of the corporation when it was incorporated and remained in those positions after the change-over to a nursery operation.

The three brothers each drew $36,000 a year salary from the corporation. Mrs. George Iwasaki draws $800 monthly salary as compensation for her care of the brothers' aged mother. The corporation had six directors. Each brother served on the board of directors, along with three directors from outside the family.

In June, 1978, plaintiff, Arthur Iwasaki, was removed as president and general manager by the board of directors, and the son of one of the other brothers was made general manager. In the early part of 1979, Arthur set

---

[1] ORS 57.595(1)(a) provides in part:

"(1) The circuit courts shall have full power to liquidate the assets and business of a corporation:

"(a) In an action by a shareholder when it is established:

"* * * * *

"(B) That the acts of the directors or those in control of the corporation are illegal, oppressive or fraudulent, or

"* * * * *

"(D) That the corporate assets are being misapplied or wasted."

up a competing nursery plant business. In July, 1979, he was removed as director by a three-to-two vote of the board. Although he was present at that meeting, he abstained from voting on his removal.

In their complaint, plaintiffs made eight separate allegations of oppressive or illegal conduct on the part of defendant that they claim requires equitable intervention by the court. The sole relief sought at trial was dissolution of the corporation. On appeal, plaintiffs restrict their claims to essentially four types of conduct: plaintiffs were excluded from participation in the corporate affairs; the corporation refused to distribute earnings to the shareholders; the other shareholders were paid excessive salaries; and the corporation misapplied corporate funds. Plaintiffs, in their brief, also argue that the court has broad equitable powers under ORS 57.595 and suggest several forms of relief short of corporate dissolution. Any equitable relief must be based on a finding of oppressive or illegal conduct justifying intervention by the court. Because we find that plaintiffs have not proven the requisite oppressive or illegal conduct, we need not address the available relief.

*Baker v. Commercial Body Builders,* 264 Or 614, 507 P2d 387, 56 ALR3d 341 (1973), discussed the type of conduct which constitutes "oppressive conduct" under ORS 57.595 and found it to be closely related to the fiduciary duty of good faith and fair dealing owed by majority to minority stockholders. The court stated that:

> "* * * [I]t has been said that a single act in breach of such a fiduciary duty may not constitute such 'oppressive' conduct as to authorize the dissolution of a corporation unless extremely serious in nature and that even a continuing course of 'oppressive' conduct may not be sufficient for that purpose unless it appears that, as a result, there has been a disproportionate loss to the minority or that those in control of the corporation are so incorrigible that they can no longer be trusted to manage it fairly in the interests of its stockholders." (Footnotes omitted.) 246 Or at 630.

We address plaintiffs' allegations of oppressive conduct and misapplication of corporate assets.

## NON-DISTRIBUTION OF EARNINGS

■ Plaintiffs contend that defendant has failed to declare adequate dividends. The corporation distributed $12,000 of earnings to each stockholder on January 1, 1980, retaining $144,000 in earnings. Insofar as dividend policy is concerned, the fiduciary duty of good faith and fair dealing owed by those in control of a corporation to minority shareholders is discharged if the decision whether to declare a dividend is made in good faith and reflects legitimate business purposes rather than the private interests of those in control. If there are plausible business reasons for the decision that can be given credence, a court will not interfere. *Zidell v. Zidell, Inc.,* 277 Or 413, 560 P2d 1086 (1977). The corporation's accountant testified that, because of the seasonal nature of the business and the resultant changes in cash-on-hand during the year, any additional distributions of earnings could necessitate substantial borrowing. The corporation has no long-term debt and relies on the retention of earnings to get through periods of low sales.

■ Plaintiffs do not dispute this plausible business purpose for the amount of retained earnings. Instead they argue that, because the retained earnings are already taxed to the shareholders, because of defendant's "subchapter S" status, defendant is obligated to distribute the earnings. Essentially the same argument was made in *Zidell v. Zidell, Inc., supra,* and rejected by the Supreme Court. Even when individual shareholders may be taxed on the retained earnings of a corporation, it is not necessarily oppressive conduct for the corporation to refuse to distribute the earnings. As indicated in *Zidell,* the earnings may be retained if in a good faith business judgment the corporation finds it necessary to retain them. Courts will not interfere in the legitimate business decisions of a private corporation just to resolve a dispute between majority and minority shareholders.

## EXCESSIVE SALARIES

■ ■ Plaintiffs claim that the other shareholders are plundering the corporation by means of excessive salaries. Payment of excessive salaries can constitute oppressive conduct. *Baker v. Commercial Body Builders, supra,* 264 Or at 629. However, here the allegedly excessive salary seems

more a product of business judgment than an attempt to siphon off profits to the detriment of non-salaried shareholders. George Iwasaki's $36,000 annual salary was set when plaintiff still was a director, and he voted to approve that amount. George Iwasaki admittedly works as few as two hours a day at the office, but his responsibility as treasurer of the business is extensive in overseeing the profit-sharing plan, accounts payable and bank loans. He lives next to the business premises and performs after-hours duties for the corporation. Defendant's accountant testified that in his opinion the salary was appropriate for the degree of responsibility. The salary has not been increased for several years and has not prevented the distribution of substantial earnings to shareholders. Plaintiffs, on the other hand, offered no evidence that the salary was excessive, "whether on a comparative basis, considering salaries paid to others in the same business for similar work, or on any other objective basis." *Baker v. Commercial Body Builders, supra,* 264 Or at 635-36.

## REMOVAL OF PLAINTIFF FROM BOARD OF DIRECTORS

■ On July 11, 1979, plaintiff was removed as a director by a three-to-two vote of the board, rather than by the shareholders, as required by ORS 57.193. Although contrary to that statute, this was not oppressive conduct. Two of the directors voting for removal held two-thirds of the corporation's shares. Consequently, the outcome would have been the same if the vote had been taken at a shareholder's meeting. Arthur was aware that he had the ability to block the action of the board by voting against it creating a tie, but instead abstained.

This situation is similar to that in *Baker v. Commercial Body Builders, supra.* There, the plaintiff shareholder was prevented from examining corporate records and was not notified of certain corporate meetings. Although the court called this "highly improper," it found that it did not amount to oppressive conduct. Plaintiff has shown technically improper conduct but has failed to demonstrate any harm or oppression that resulted.

## MISAPPLICATION OF CORPORATE ASSETS

Plaintiffs contend that an $800 monthly salary paid to Mrs. George Iwasaki and gifts made to Dr. Everett

Sorenson, a member of the board, amount to misapplication of corporate funds. The gifts to Dr. Sorenson amounted to approximately $16,897.75 through 1978 and an additional $2,000 to $3,000 in 1979.

Oregon appellate courts have not previously addressed the misapplication of corporate funds provision of the forced dissolution statute, ORS 57.595(1)(a)(D). We conclude that whether a use of corporate funds amounts to misapplication under the statute must be evaluated in the light of the corporation's general financial condition. A corporate gift might constitute misapplication of funds if, for example, it substantially cuts into the corporation's ability to pay dividends, but not if the corporation's profits are large in proportion to the gift. *See, e.g., Gray v. Hall,* 10 Ill App 3d 1030, 295 NE2d 506 (1973). We note that defendant has been a highly profitable business, showing a net income (before owners' compensation, depreciation and retirement plan contributions) of $209,069.87 in 1975, $166,819.29 in 1976, $201,505 in 1977, $230,723.12 in 1978, and $151,423.43 in 1979. The gifts to Dr. Sorenson were not large when considered in this light. He made substantial contributions to the corporation, treated employes at substantially reduced rates, served without pay as a corporate director and made his office available for directors' meetings without charge. The gifts served the corporate purpose of maintaining Dr. Sorenson's good will towards the company.

The salary paid to Mrs. George Iwasaki was compensation for nursing the elderly mother of the three brothers. Presumably, these gifts promoted the interests of all the stockholders and discriminated against none. Certainly the majority shareholders did not benefit by them at plaintiffs' expense, and plaintiffs have not shown that the gifts were made in bad faith. We will not order a corporate dissolution because of the gifts.

The alleged improprieties of defendant's directors are insufficient to merit the judicial intervention that plaintiffs seek. Plaintiffs remain one-third owners of a profitable business, and their voting strength remains undiluted.

Affirmed.