Argued and submitted December 18, 1985, reversed and remanded September 24, 1986

## BROOKE et al,
*Respondents,*

*v.*

## MT. HOOD MEADOWS OREG., LTD. et al,
*Appellants.*

(A8309-05568; CA A34946)

725 P2d 925

Stephen T. Janik, Portland, argued the cause for appellants. On the briefs were Wayne Hilliard, Jeffrey M. Batchelor and Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

John R. Brooke, Portland, argued the cause for respondents. On the brief were Peter G. Voorhies and Wood Tatum Mosser Brooke & Holden, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Plaintiffs are three of 18 limited partners in Mt. Hood Meadows, Oreg., Ltd., a limited partnership established to carry on the business of constructing and operating a winter sports development in the Hood River Meadows area of the Mt. Hood National Forest. They brought this action against the general partner, Mt. Hood Meadows Development Corp., and the partnership for money had and received and conversion. The conversion claim was dismissed on the pleadings; after a trial on the merits, the court awarded judgment to plaintiffs on their claim for money had and received. Defendants appeal, assigning as error the trial court's denial of their motion for judgment on the pleadings on the money had and received claim. ORCP 21B. We reverse.

The question is whether plaintiffs, as limited partners, have a right to compel the general partner to distribute to them all of the profits allocated to them under the provisions of the partnership agreement. For the years in which profits were earned after 1974, the general partner's board of directors voted to distribute only 50 percent of the limited partners' taxable profits. The remaining profits were retained and reinvested in the business. The trial court held that the general partner had no authority to retain profits and ordered that it distribute annually to all limited partners cash equal to the profits allocated to them.

Article X of the limited partnership agreement provides:

"POWERS AND RESPONSIBILITIES, COMPENSATION

"Management and control of the partnership business shall be vested exclusively in the general partner, who, except as otherwise herein provided, shall have all the rights and powers and be subject to all the restrictions and liabilities of a general partner. The general partner shall have the power to borrow funds for the partnership's business and to pledge, mortgage, assign or otherwise hypothecate any or all properties of the partnership to secure such borrowings.

"None of the limited partners shall have any voice or take any part in the control or management of the business of the partnership nor shall any limited partner have any power or authority to act for or on behalf of the partnership in any

respect whatever; provided that nothing herein contained shall in any way affect the rights of the limited partners to dissolve the partnership as provided in Article XI hereof."

That section directs that all management decisions of the partnership be the responsibility of the general partner and that the limited partners have no right to take part in the control of the business. That provision protects the limited partners from becoming liable as general partners. *Former* ORS 69.280.[1] Management of the business necessarily includes decisions regarding the management of profits, unless the parties have specified otherwise in the limited partnership agreement.

Article VII[2] of the agreement defines the partners'

---

[1] ORS 69.150 to ORS 69.530 were repealed, Or Laws 1985, ch 677, § 69, effective July 1, 1986, and replaced by ORS 70.005 to ORS 70.490. *Former* ORS 69.280 provided:

"(1) A limited partner shall not become liable as a general partner unless, in addition to the exercise of rights and powers as a limited partner, the limited partner takes part in the control of the business.

"(2) A limited partner shall not be considered as taking part in the control of the business by virtue of possessing or exercising a power, specified in the certificate or partnership agreement, to vote upon matters affecting the basic structure of the partnership, including the following matters or others of a similar nature:

"(a) The dissolution and winding up of the partnership;

"(b) The sale, exchange, lease, mortgage, pledge or other transfer of all or substantially all the assets of the partnership other than in the ordinary course of business;

"(c) Incurring of indebtedness by the partnership other than in the ordinary course of business;

"(d) A change in the nature of the business of the partnership;

"(e) The election or removal of a general partner;

"(f) The amendment of the partnership agreement; or

"(g) The continuation of the partnership as provided in ORS 69.360.

"(3) A limited partner does not participate in the control of the business within the meaning of subsection (1) of this section solely by participating in a derivative action as provided in ORS 69.475.

"(4) The statement of powers set forth in subsections (2) and (3) of this section shall not be construed as exclusive or as indicating that any other powers possessed or exercised by a limited partner shall be sufficient to cause the limited partner to be considered taking part in the control of the business within the meaning of subsection (1) of this section."

[2] Article VII provides:

interest in the *capital* of the partnership:

> "The partners' interest in the capital of the partnership shall be in the proportions in which the agreed capital contributions of each, increased by his share of profits, gains, credits, and additional capital contributions and decreased by his share of losses, expenses, deductions and withdrawals bears to the aggregate capital contributions of all partners so increased or decreased, as the case may be."

Article VI of the agreement describes each limited partner's interest in the *profits*.

> "Each limited partner shall be entitled to a portion of the remainder of the profits after payment to the general partner as specified above, which bears the same ratio to such remainder as such limited partner's capital contribution bears to the total capital contribution of the limited partners."

A partner's interest in the capital of the partnership is made up of the partner's capital contributions and, in part, his share of undistributed profits. That is what, in accounting terms, constitutes a partner's capital account. Although Article VI, the only section of the agreement that addresses the partners' right to profits, describes the percentage of profits to which each partner is "entitled," it does not address the *distribution* of profits; it merely provides the method of calculating and allocating profits. We conclude that the agreement contains no provision expressly directing the general partner to distribute profits to the limited partners.

■       Plaintiffs argue that the authority to retain profits is one that must be granted expressly to the general partner and that, in the absence of a grant, is presumed to have been

---

"*CAPITAL, ADDITIONAL CAPITAL, RETURN OF CAPITAL*

"The partners' interest in the capital of the partnership shall be in the proportions in which the agreed capital contributions of each, increased by his share of profits, gains, credits, and additional capital contributions and decreased by his share of losses, expenses, deductions and withdrawals bears to the aggregate capital contributions of all partners so increased or decreased, as the case may be.

"The partners shall not be required to make capital contributions in addition to those herein provided for unless further capital contributions are unanimously agreed upon by all the partners, general and limited.

"The contributions of each partner shall be returned upon dissolution and termination of the partnership only as provided in Article XIV."

withheld. That proposition is too broad. With certain exceptions and unless otherwise agreed, a broad grant of authority to manage a business, such as that applicable here, includes the authority to conduct all affairs reasonably necessary or incidental to the expressly authorized business. *Beeson et al. v. Hegstad et al.,* 199 Or ,325, 330, 261 P2d 381 (1953); *see Restatement (Second) Agency* 189, § 73 (1958). Decisions regarding the management, including the distribution, of profits fall within that broad authority.

Profit is an accounting concept; its allocation takes place in the partnership books, and it may bear little or no relationship to cash on hand. Each partner is taxed on his distributable share of the profits, regardless of whether cash is actually distributed or whether it is available for distribution. For that reason, the partnership agreement must specify how the profits are to be allocated. The availability of cash for distribution, however, depends strictly on management's operation of the business. The business' future cash needs are also determined by management. That is why the decision as to how much, if any, of a limited partner's share of the profits is to be distributed is a management decision. If a limited partner were to take part in that aspect of the control of the business, the partner would risk the loss of his limited liability. *Former* ORS 69.280.

■     Plaintiffs assert that the general partner's decision to retain profits effectively forces the limited partners to make additional capital contributions to the partnership against their will, contrary to Article VII of the agreement. *See* n 2, *supra.* We do not agree that that is the result. A capital contribution is cash or property contributed by a partner; a capital contribution is, by definition, infused into the business from the outside and is not generated by the business. *Black's Law Dictionary* 189 (5th ed 1979). If the partnership agreement had required that all profits be distributed, then perhaps the retention of profits could be viewed as an involuntary capital contribution by the partners. When, however, partnership profits are not required to be distributed, undistributed profits do not constitute a "capital contribution" under Article VII of the agreement. That article distinguishes a "capital contribution" from an increase in a partner's interest in the capital of the partnership because of his share of the profits, among other things, all of which

comprise a partner's interest in the capital of the partnership.

Plaintiffs' final assertion meriting discussion is that the accumulation of profits in their capital accounts increased their liability. Plaintiffs' liability was not increased beyond that provided in Article VIII of the limited partnership agreement, under which their liability is limited to their "interest in the capital of the partnership."[3] It is not limited to their "capital contribution." Although it is true that their interest in the capital of the partnership increased with the increase in undistributed profits, they agreed in Article VII that undistributed profits be a component of their interest in the capital of the partnership and agreed in Article VIII that their liability be limited to that amount.

A limited partner's position is analogous to that of a corporate shareholder, whose role is that of an investor with limited liability, *former* ORS 69.280(1), and with no voice in the operation of the enterprise. *See Lichtyger v. Franchard Corp.,* 18 NY2d 528, 277 NYS2d 377, 223 NE2d 869 (1966). With limited exceptions, which do not include control over the distribution of profits, a limited partner who takes part in the control of the business may be held liable as a general partner. *Former* ORS 69.280. A general partner's relationship to the limited partners is analogous to the relationship of a corporate board of directors to the corporate shareholders; the general partner functions as a fiduciary with a duty of good faith and fair dealing. *Bassan v. Investment Exchange Corp.,* 83 Wash 2d 922, 524 P2d 233 (1974); *see Iwasaki v. Iwasaki Bros., Inc.,* 58 Or App 543, 547, 649 P2d 598 (1982). Like the corporate director's fiduciary responsibility to the shareholders for the declaration of dividends, the general partner's duty to the limited partners in the distribution of profit is discharged by decisions made in good faith that reflect legitimate business concerns. *See Iwasaki v. Iwasaki Bros., Inc., supra.* There is no

---

[3] Article VIII provides:

*"LIMITED LIABILITY*

"Except to the extent of his or its interest in the capital of the partnership and to the extent of his or its unpaid capital contribution, a limited partner shall have no liability for or on account of any of the losses of the partnership. To the extent that losses of the partnership exceed its assets plus any unpaid balance of the limited partner's capital contributions, such losses shall be borne solely by the general partner."

contention here that the general partner acted in bad faith in failing to distribute all of the profits. The limited partners' right to a share of the profits of the partnership under *former* ORS 69.240(2)[4] is unrestricted; however, in the absence of a provision to the contrary in the partnership agreement, the right to a *distribution* of that share is subject to the good faith judgment of the general partner. The agreement is not ambiguous and contains no provision that would give plaintiffs the right to demand payment for undistributed profits. Accordingly, the trial court erred in denying defendants' motion for judgment on the pleadings. Given that conclusion, we need not address defendants' other assignments of error.

Reversed and remanded for entry of judgment for defendants.

---

[4] *Former* ORS 69.240(2) provided:

"A limited partner shall have the right to receive a share of the profits or other compensation by way of income, and to the return of his contribution as provided by ORS 69.270 and 69.230."