547 S.E.2d 278

**STATE of West Virginia ex rel. Eddie B. SMITH, Michael Smith and Donald P. Smith, Petitioners,**

v.

**Honorable Thomas C. EVANS, III, Judge of the Circuit Court of Jackson County, and Larry D. Smith, Respondents**

No. 29461.

Supreme Court of Appeals of West Virginia.

Submitted April 24, 2001.

Decided May 11, 2001.

John H. Tinney, F. Richard Hall, J. Michael Weber, Spilman, Thomas & Battle, Charleston, West Virginia, for the Petitioners, Eddie B. and Michael Smith.

Edward D. McDevitt, Kenneth E. Webb, Jr., Bowles Rice McDavid Graff & Love, Charleston, West Virginia, for the Respondent, Larry D. Smith.

Robert B. Allen, Thomas E. McHugh, Allen, Guthrie & McHugh, Charleston, West Virginia, for the Petitioner, Donald P. Smith.

ALBRIGHT, Justice:

Petitioners Carl E. Smith, Inc. ("Smith, Inc."), Carl E. Smith Petroleum, Inc. ("Petroleum, Inc."), Eddie B. Smith, Donald P. Smith, and Michael Smith seek a writ of

prohibition in connection with the April 4, 2001, entry of an order by the Circuit Court of Jackson County which reinstated Respondent Larry D. Smith as President of Petroleum, Inc. and enjoined the individual Petitioners from taking any action to interfere with the operations of Petroleum, Inc. during the pendency of the underlying shareholder derivative cause of action initiated by Larry D. Smith. As grounds for the requested writ of prohibition, Petitioners argue that the trial court clearly exceeded its authority in nullifying the actions of Smith, Inc., as the sole stockholder of Petroleum, Inc., in removing Larry D. Smith as the president of Petroleum, Inc. and in enjoining the individual Petitioners from interfering with the operations of Petroleum, Inc. Upon a full review of the applicable statutory and case law, we conclude that the circuit court exceeded its authority in restoring Larry D. Smith as the president of Petroleum, Inc. following the decision of the majority stockholder [1] to remove Mr. Smith as an officer of such company and in enjoining Petitioners from taking any action relevant to Petroleum, Inc. Accordingly, a writ of prohibition shall issue to prevent the enforcement of paragraphs four and five of the April 4, 2001, order of the circuit court.

## I. Standard of Review

 The standard we apply when considering whether to issue a writ of prohibition that does not involve issues of jurisdiction is stated in syllabus point four of State ex rel. Hoover v. Berger, 199 W.Va. 12, 483 S.E.2d 12 (1996):

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's

1. Smith, Inc. is the sole shareholder of Petroleum, Inc. In corporate parlance, Smith, Inc. is a closely-held corporation.

order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Our focus in this case is on the third factor, given that Petitioners argue that the actions of the trial court are in violation of well-established principles of corporate law.

## II. Factual and Procedural Background

As necessary background to this case, Smith, Inc. is a pipeline company founded by the late Carl Smith with its principal offices in Sandyville, West Virginia, that employs in excess of one thousand employees and is in the business of constructing pipeline projects for major utilities throughout the eastern half of the United States. Petroleum, Inc. is a wholly-owned subsidiary of Smith, Inc., that has extensive drilling and production operations in West Virginia and elsewhere. After Carl Smith died, he left Smith, Inc. in three equal shares to his three sons: Larry D., Eddie B., and Donald P. Smith. Historically, Larry D. Smith has managed the operations of Petroleum, Inc., while Eddie B. and Donald P. have devoted their time to managing the interests of Smith, Inc.

On April 2, 1999, Larry D. Smith filed a shareholder derivative cause of action in the Circuit Court of Jackson County against the individual Petitioners in this case and Smith, Inc. Through that action, Larry D. Smith alleged that Eddie B. and Donald P. Smith converted assets, breached fiduciary duties, engaged in fraud and misrepresentation, and were unjustly enriched as a result of these actions. In response to the motion of Smith, Inc.[2] to convert the shareholder derivative action into a corporate dissolution action under West Virginia Code § 31–1–134 (1974) (Repl.Vol.1996), a hearing was held on February 4, 2000, which resulted in the entry of an order by the Honorable Charles E. McCarty on April 28, 2000, directing that the shareholder derivative action be converted into a section 134 proceeding;[3] appointing former Justice Franklin Cleckley as commissioner to appraise the fair value of the stock of Smith, Inc., and staying further action in the section 134 proceeding pending a determination of the value of Larry D. Smith's stock in Smith, Inc.

During the valuation stage of the section 134 proceeding, two vastly differing valuations of the corporate stock were produced.[4] Before any final action was taken with regard to the valuation required under section 134, the parties appeared before the circuit court in connection with a March 2, 2001, motion filed by Petitioners seeking to compel an accounting from Larry D. Smith with regard to Petroleum, Inc.; to confirm the removal of Larry D. Smith as president of Petroleum, Inc. and as a director of Smith, Inc.; and to bar Larry D. Smith from company premises. On the same date that this motion was filed, Eddie B. and Donald P.

2. This motion was filed on or about December 9, 1999.

3. In the circuit court's ruling of April 28, 2000, Judge McCarty found that the statutory elements for permitting a dissolution proceeding under section 134 were present: (1) the existence of "not less than one fifth in interest of the shareholders of a corporation [who] desire to wind up its affairs;" and (2) a demonstration of "sufficient cause" for the corporate dissolution. W.Va.Code § 31–1–134.

4. Arnett & Foster, PLLC, valued Smith, Inc. and its wholly-owned subsidiary Petroleum, Inc. at 21 million dollars as of December 31, 1998. Under this valuation completed on March 7, 1999, before the court ordered the section 134 proceeding, Larry D. Smith's one-third interest was worth 7 million dollars. In contrast to the Arnett & Foster valuation, Dan Selby, an economist hired by Smith, Inc., stated in a September 29, 2000, report that Smith, Inc. was worth approximately 8 million dollars and that Larry D. Smith's interest was worth 2.3 million dollars. The Selby valuation was based on financial information concerning the company through December 31, 1999.

Smith had executed a written agreement removing Larry D. Smith as the president of Petroleum, Inc. and as a director of Smith, Inc.[5]

As the result of a hearing held on March 14, 2001, before the Honorable Thomas C. Evans,[6] the circuit court entered the order which is the subject of this request for extraordinary relief. Included in the multiple rulings made by the trial court in its April 4, 2001, order is a rescission of the April 28, 2000, order authorizing the section 134 proceeding; the conditional[7] reinstatement of Larry D. Smith as president of Petroleum, Inc.; and the enjoinment of Eddie B. and Donald P. Smith from interfering with the operations of Petroleum, Inc. during the pendency of the litigation. Through this proceeding, Petitioners challenge the authority of the circuit court to reinstate an officer removed by corporate action, as well as the lower court's directive regarding interference with the operations of Petroleum, Inc.

## III. Discussion

■ The crux of Petitioners' argument in support of their request for a writ of prohibition is that the circuit court, in reversing a corporate decision of a majority stockholder, clearly exceeded its authority. The law is clear, according to Petitioners, that absent fraud, the majority shareholders of a corporation have the uncontrollable right to manage the affairs of a corporation. We stated this well-recognized tenet of corporate law in syllabus point one of *Smiley v. New River Co.*, 72 W.Va. 221, 77 S.E. 976 (1913):

The majority of the stockholders of a solvent going corporation, in the absence of fraud, or conduct amounting to fraud, and so long as they keep within their charter, have the uncontrollable right to manage the corporate affairs, and a court of equity will not interfere at the instance of a minority of the stockholders, by receivers or otherwise, to control corporate acts or management.

In this same vein, it is well-established that a corporation, in the absence of allegations of fraud, retains the power to remove its officers or directors. *See generally* 2 Fletcher Cyclopedia *Corp.* § 358 (1998). The provisions of the West Virginia Corporation Act, West Virginia Code §§ 31–1–1 to –158 (1975) (Repl.Vol.1996) make clear that the removal of corporate officers or agents may be effected by the corporation's board of directors "whenever in its judgment the best interests of the corporation will be served thereby." W.Va.Code § 31–1–104(b).

■ Since the power of removal is vested solely in the corporation,[8] it stands to reason that a court is without jurisdiction to reinstate a corporate officer removed pursuant to the lawful acts of a corporation's directors absent a finding of fraud or statutory authority. Similarly, a court lacks jurisdiction, absent statutory authority,[9] "to grant injunctions restraining officers from performing their corporate duties since this would have the same effect as their removal." *Harkey v. Mobley*, 552 S.W.2d 79, 81 (Mo.Ct. App.1977).

---

**5.** The actions were taken by Smith, Inc. as the sole shareholder of Petroleum, Inc. through Eddie B. Smith, its president, and Eddie B. and Donald P. Smith, as its directors.

**6.** This case was transferred to Judge Evans when he took office in January 2001.

**7.** The April 4, 2001, order provides that Larry D. Smith's reinstatement as president could only occur if within ten days of the March 4, 2001, hearing he returned an unspecified amount of funds minus any taxes paid on such money that he and his daughter were paid from Petroleum, Inc. as bonuses. Those funds, minus the $600,000 in taxes, were reportedly repaid.

**8.** *See Harkey v. Mobley*, 552 S.W.2d 79, 81 (Mo. Ct.App.1977) (stating that "[t]he only power of

amotion is in the corporation itself"). Amotion, as explained by this Court in *Richards v. Town of Clarksburg*, 30 W.Va. 491, 4 S.E. 774 (1887), is "the removal of an officer in a corporation from his *office.*" *Id.* at 497, 4 S.E. at 781.

**9.** While the provisions of West Virginia Code § 31–1–134 do grant a circuit court authority to "award such injunctions in the cause as justice and right may require," this authority is incident to a finding of a need for corporate dissolution. Since the trial court had rescinded the section 134 proceeding in its April 4, 2001, order, this authority for awarding injunctive relief was no longer applicable at the time when the trial court enjoined Petitioners from any involvement in Petroleum, Inc.

██ Arguing that the trial court was within its grant of power in reinstating him as president, Larry D. Smith relies upon this Court's recognition in *Masinter v. WEBCO Co.*, 164 W.Va. 241, 262 S.E.2d 433 (1980), of the oppressive conduct exception to the general rule that a corporation has complete control of its affairs. We recognized in syllabus point two of *Masinter* that

> [w]hile the officers and directors of a business corporation are accorded a rather broad latitude in the conduct of the affairs of the corporation, they occupy a fiduciary relationship toward it and its shareholders. The same fiduciary relationship exists on the part of the majority shareholders of a business corporation toward its minority shareholders.

*Id.* at 241, 262 S.E.2d at 435. In describing the nature of this fiduciary relationship, we held that "[a] violation of the fiduciary relationship may result from oppressive conduct, which is conduct that departs from the standards of good faith and fair dealing which are inherent in the concept of a fiduciary relationship." *Id.* at syl. pt. 3. With regard to what qualifies as oppressive conduct, we stated that "[a]n attempt to 'freeze or squeeze out' a minority shareholder from deriving any benefit from his investment in a private business corporation, without any legitimate business purpose, may constitute oppressive conduct." *Id.* at syl. pt. 4.

Because *Masinter* was presented as an appeal from a grant of summary judgment and because the lower court did not make any findings regarding the existence of oppressive conduct, we did not reach the issue of appropriate relief in connection with the allegations of corporate wrongdoing made in that case.[10] We did, however, identify ten recognized alternatives to outright corporate dissolution when oppressive conduct has been proven:

> "(a) The entry of an order requiring dissolution of the corporation at a specified future date, to become effective only in the event that the stockholders fail to resolve their differences prior to that date."

> "(b) The appointment of a receiver, not for the purposes of dissolution, but to continue the operation of the corporation for the benefit of all of the stockholders, both majority and minority, until differences are resolved or 'oppressive' conduct ceases."

> "(c) The appointment of a 'special fiscal agent' to report to the court relating to the continued operation of the corporation, as a protection to its minority stockholders, and the retention of jurisdiction of the case by the court for that purpose."

> "(d) The retention of jurisdiction of the case by the court for the protection of the minority stockholders without appointment of a receiver or 'special fiscal agent.'"

> "(e) The ordering of an accounting by the majority in control of the corporation for funds alleged to have been misappropriated."

> "(f) The issuance of an injunction to prohibit continuing acts of 'oppressive' conduct and which may include the reduction of salaries or bonus payments found to be unjustified or excessive."

> "(g) The ordering of affirmative relief by the required declaration of a dividend or a reduction and distribution of capital."

> "(h) The ordering of affirmative relief by the entry of an order requiring the corporation or a majority of its stockholders to purchase the stock of the minority stockholders at a price to be determined according to a specified formula or at a price

---

**10.** The acts underlying the dissolution proceeding initiated by the plaintiff stockholder in *Masinter* included the lack of formal board meetings to approve a $700,000 loan and the lease of a Charleston store; the claim that the Charleston store opening was designed to injure plaintiff's retail business; and the claim that the $700,000 loan jeopardized plaintiff's stock pledge based on the possibility of a default. Although the plaintiff in *Masinter* was removed from the board of directors and as secretary of the closely-held corporation and consequently stopped receiving the salary associated with that office, it does not appear that those actions were included as part of the basis for the dissolution suit that was initiated under the statutory precursor to West Virginia Code § 31–1–134. *See Masinter*, 164 W.Va. at 246–47, n. 3, 262 S.E.2d at 437–38, n. 3 (quoting the text of West Virginia Code § 31–1–81 (1931) and observing that plaintiff "owned more than one-fifth of the outstanding shares of WEBCO").

determined by the court to be a fair and reasonable price."

"(i) The ordering of affirmative relief by the entry of an order permitting minority stockholders to purchase additional stock under conditions specified by the court."

"(j) An award of damages to minority stockholders as compensation for any injury suffered by them as the result of 'oppressive' conduct by the majority in control of the corporation."

*Masinter,* 164 W.Va. at 254–55 n. 12, 262 S.E.2d at 441–42, n. 12 (quoting *Baker v. Commercial Body Builders, Inc.,* 264 Or. 614, 507 P.2d 387, 395–96 (1973) and citations omitted).

■ Larry D. Smith maintains that the lower court had before it, both through stipulation, and through testimonial and physical evidence, a sufficient basis from which to conclude that Eddie B. and Donald P. Smith had engaged in oppressive conduct. Based on this evidence of oppressive conduct, Larry D. Smith argues that the trial court acted within its powers, under authority of *Masinter,* in nullifying the actions of the individual Petitioners with regard to their removal of him as president of Petroleum, Inc.[11]

There are two critical flaws in Larry D. Smith's reliance on oppressive conduct as authority for the circuit court's actions. First and foremost, is the fact that the trial court's order of April 4, 2001, contains no finding that the individual Petitioners have engaged in oppressive conduct. Although

Larry D. Smith maintains in his responsive brief that the trial court "properly concluded ... that the majority shareholders have engaged and continue to engage in oppressive conduct," there simply is no finding by the lower court that supports this statement. The second flaw in Larry D. Smith's reasoning results from his contention that no factual finding of oppressive conduct was necessary due to Petitioner's stipulation to such wrongful conduct. The record makes abundantly clear that while Petitioners did stipulate to oppressive conduct at one point during the underlying proceeding, that stipulation was conditional and expressly limited in purpose. Petitioners both proposed and submitted a stipulation to the existence of oppressive conduct solely for the purpose of converting the shareholder derivative proceeding into a section 134 proceeding.[12] *See* W.Va.Code § 31–1–134. Based upon the trial court's rescission of the section 134 proceeding by its April 4, 2001, ruling, Petitioners maintain that their stipulation of oppressive conduct has been effectively withdrawn.

We agree with Petitioners that once the section 134 proceeding was vacated, the stipulation as to oppressive conduct was constructively retracted. Absent either a factual finding by the lower court of oppressive conduct or the continuing validity of Petitioners' stipulation to such conduct, this Court has no basis from which it could proceed to consider those alternatives to corporate dissolution identified in *Masinter. See* 164

---

**11.** While we do not reach the issue of whether the removal of a corporate officer pursuant to the corporate by-law procedures and within the requirements established by West Virginia Code § 31–1–104 could constitute oppressive conduct on its own, at least one court has concluded that the removal of a director was not oppressive conduct where the removal vote was accomplished by a 3–2 vote of the board of directors rather than by the shareholders as required by Oregon law. The Oregon Court of Appeals reasoned in *Iwasaki v. Iwasaki Brothers, Inc.,* 58 Or.App. 543, 649 P.2d 598 (1982), that the removal was nonetheless properly effectuated since "the outcome would have been the same if the vote had been taken at a shareholder's meeting" because "[t]wo of the directors voting for removal held two-thirds of the corporation's shares." 649 P.2d at 601. Thus, notwithstanding a finding of oppressive conduct, it is possible that

reinstatement may not be within the realm of appropriate relief because the individual Petitioners comprised the necessary majority to effect the removal of Larry D. Smith as the president of Petroleum, Inc.

**12.** The transcript from the February 4, 2000, hearing reflects these statements by Petitioners' counsel: "And so the record is clear. On behalf—I will stipulate that the oppressive conduct is present. That could convert this into a 134 proceeding." When questioned by the trial court at the March 14, 2001, hearing regarding this stipulation, Petitioners' counsel confirmed the limited nature of the stipulation:

> THE COURT: So—so—so you're saying that that's an admission of oppressive conduct for one purpose but not others?
> COUNSEL: Precisely, your Honor.

W.Va. at 254–55, n. 12, 262 S.E.2d at 441–42, n. 12. As in *Masinter*, we are analogously constrained from reaching the ultimate issues concerning the attempted "freeze or squeeze out" of the minority stockholder given the lack of a finding below of oppressive conduct. *See id.* at 256, 262 S.E.2d at 442.

Notwithstanding our procedural limitations, we feel compelled, given the substantial economic interests involved, to urge the lower court to assist the parties in reaching an expeditious resolution to the underlying issues which are in need of prompt attention. Unless the parties achieve a settlement of this matter or the circuit court is able to effect a judicial resolution, there is a substantial risk that very valuable corporate assets could be dissipated and additionally, the possibility that a significant number of jobs might be affected. While this case has reverted procedurally to its original posture of a shareholder derivative action, the parties may choose to seek amendment of the pleadings or through appropriate motion, again seek to force a resolution of these matters through a section 134 proceeding. *See* W.Va. Code § 31–1–134. If the circuit court takes additional evidence and concludes that oppressive conduct has occurred, the equitable options delineated in *Masinter* as an alternative to corporate dissolution are available for purposes of crafting appropriate relief to such a finding. *See* 164 W.Va. at 254–55, n. 12, 262 S.E.2d at 441–42, n. 12. Through his responsive pleading and attached exhibits, Larry D. Smith has informed this Court that Petitioners, simultaneous to instituting their petition for a writ of prohibition, have instituted a cash-out or freeze-out merger. *See* W.Va.Code §§ 31–1–34, –122, –123; *Persinger v. Carmazzi*, 190 W.Va. 683, 441 S.E.2d 646 (1994). While we take no position regarding how this matter should progress, we do exhort the trial court to proceed with alacrity to facilitate a prompt resolution of this matter on remand, barring an intervening settlement.

Based on our determination that the lower court exceeded its authority in reinstating Larry D. Smith as president of Petroleum, Inc. and in enjoining Petitioners from taking any actions with regard to Petroleum, Inc., the necessary foundation for issuing a writ of prohibition has been demonstrated. *See* Syl. Pt. 4, *Berger*, 199 W.Va. at 14–15, 483 S.E.2d at 14–15. Accordingly, a writ of prohibition is hereby issued with regard to enforcement of paragraphs four and five of the April 4, 2001, ruling of the Circuit Court of Jackson County.

Writ granted.